KEKER, VAN NEST & PETERS LLP
SHARIF E. JACOB - # 257546
sjacob@keker.com
NICHOLAS GOLDBERG - # 273614
ngoldberg@keker.com
PUJA PARIKH - # 331823
pparikh@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188

Attorneys for Plaintiff
Maplebear, Inc. dba Instacart

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

MAPLEBEAR INC. DBA INSTACART,

Plaintiff,

v.

UBER TECHNOLOGIES, INC.,

Defendant.

Misc. Case No. 3:21-mc-80007

[*underlying* action: United States District Court for the Eastern District of Texas, Case No. 2:20-cv-00240-JRG]

**PLAINTIFF MAPLEBEAR INC. DBA INSTACART'S MOTION TO COMPEL UBER TECHNOLOGIES, INC.'S COMPLIANCE WITH SUBPOENA; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Date:

Time:

Judge:

# TABLE OF CONTENTS

**Page**


NOTICE OF MOTION AND MOTION ........................................................ 1

CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 37-1 ........................ 1

MEMORANDUM OF POINTS AUTHORITIES ............................................. 2

I. INTRODUCTION ........................................................................ 2

II. BACKGROUND ......................................................................... 4

A. Cornershop illegally scrapes Instacart's product catalog to satisfy Uber's desire to quickly launch in the United States. ........................................ 4

B. Instacart sues Cornershop to enjoin and seek redress for Cornershop's illegal theft of Instacart's copyrighted and proprietary data. .......................... 5

C. Instacart seeks narrow discovery from Uber, but Uber refuses to produce documents or a witness for deposition. ................................................ 6

III. STANDARD ............................................................................ 8

IV. ARGUMENT ............................................................................ 8

A. Uber's business models, forecasts, business plans, financial documents, variance analyses, valuations of Cornershop's U.S. operations, and the timing of Cornershop's entry into the U.S. market [RFPs & Deposition Topics 3, 4, 5] ........................................................................ 8

B. Cornershop's scraping and use of images, data, trademarks, or trade names without permission, and Uber's knowledge of the same [RFP & Deposition Topics 1 & 2] ........................................................... 11

C. Uber's search for, collection, and production of documents [RFP & Deposition Topic 6] ................................................................. 13

V. CONCLUSION .......................................................................... 14

**TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Aspen Tech., Inc. v. M3 Tech.*, Inc., 569 F. App'x 259 (5th Cir. 2014) .......... 9

*Baykeeper v. Kramer Metals Inc.*, 2009 WL 10671577 (C.D. Cal Feb. 27, 2009) .......... 8

*Bristol-Myers Squibb Co. v. Kite Pharma Inc.*, 2019 WL 8589409 (C.D. Cal. May 29, 2019) .......... 10

*Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465 (9th Cir. 1992) .......... 8

*Carpenters Pension Tr. v. Lindquist Family LLC*, 2014 WL 1569195 (N.D. Cal. Apr. 18, 2014) .......... 13

*Deltona Transformer Corp. v. NOCO Co.*, 2020 WL 4057771 (W.D. Wash. July 20, 2020) .......... 10

*Doe v. Trump*, 329 F.R.D. 262 (W.D. Wash. 2018) .......... 12

*DSC Commc'ns Corp. v. Next Level Commc'ns*, 929 F. Supp. 239 (E.D. Tex. 1996) .......... 9

*Energy Intelligence Grp., Inc. v. Kayne Anderson Capital Advisors, L.P.*, 948 F.3d 261 (5th Cir. 2020) .......... 11

*Epic Sys. Corp. v. Tata Consultancy Servs. Ltd.*, 980 F.3d 1117 (7th Cir. Aug. 20, 2020) .......... 9

*Griffo v. Oculus VR, Inc.*, 2018 WL 6265067 (C.D. Cal. Sept. 18, 2018) .......... 9

*Instacart v. Cornershop Technologies, Inc., et al.*., E.D. Tex. Civil Action No. 2:20-cv-00240-JRG .......... *passim*

*LG Display Co. v. Chi Mei Optroelectronics Corp.*, 2009 WL 223585 (S.D. Cal. Jan. 28, 2009) .......... 11

*Sia Chue Yang v. Schwarzenegger*, 2010 WL 11587074 (N.D. Cal. May 12, 2010) .......... 13

*Sol v. Whiting*,
2014 WL 12519787 (D. Ariz. Sept. 9, 2014) ........ 8, 11, 12, 13

*Straus v. DVC Worldwide, Inc.*,
484 F. Supp. 2d 620 (S.D. Tex. 2007) ........ 9

*Symantec Corp. v. Zscaler, Inc.*,
2019 WL 2288278 (N.D. Cal. May 29, 2019) ........ 10

*U.S. v. Lee*,
2009 WL 1108697 (N.D. Cal. Apr. 24, 2009) ........ 8

*U.S. v. Philips*,
477 F.3d 215 (5th Cir. 2007) ........ 11

*Waymo LLC v. Uber Techs., Inc.*,
2017 WL 2929439 (N.D. Cal. July 7, 2017) ........ 8, 10

**Federal Statutes and Rules**

17 U.S.C. § 504(b) ........ 9

Fed. R. Civ. P. 26 ........ 8

**NOTICE OF MOTION AND MOTION**

Please take notice that on _________, 2021, at 9:00 a.m., or as soon thereafter as this matter can be heard in the Courtroom _______ of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco CA 94102, Plaintiff Maplebear Inc. dba Instacart ("Instacart") will and hereby moves, pursuant to the Federal Rules of Civil Procedure, Rule 45, for an Order Compelling Compliance with Subpoena on Uber Technologies, Inc ("Uber"). This motion is brought pursuant to Rule 45 of the Federal Rules of Civil Procedure on the grounds that Uber has failed to provide a witness and relevant, non-privileged documents responsive to the subpoena. The subpoena at issue relates to an action currently pending in the Eastern District of Texas (*Maplebear Inc, dba Instacart v. Cornershop Technologies, Inc., et al.*., E.D. Tex. Civil Action No. 2:20-cv-00240-JRG (the "underlying action")).

This Motion is based on this Notice of Motion and Motion to Compel Uber's Compliance with Subpoena, the attached Memorandum of Points and Authorities, the Declaration of Puja Parikh and accompanying exhibits, all pleadings and papers on file herein, and upon such further oral and documentary evidence as may be presented at or before the hearing on this Motion.

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 37-1**

Pursuant to Local Rule 37-1, Instacart hereby certifies that its counsel has corresponded with counsel for Uber both by teleconference and in writing regarding the disputed issues, including two formal meet and confer calls to address these disputed issues on November 2, 2020, and November 23, 2020 and that such attempts to resolve these issues were unsuccessful. *See* Declaration of Puja Parikh ("Parikh Decl.") at ¶¶ 6-16.

**MEMORANDUM OF POINTS AND AUTHORITIES**

Instacart respectfully files this memorandum of points and authorities in support of its motion to compel production of documents, information, and testimony from non-party Uber.

## I. INTRODUCTION

In October 2019, Uber publicly announced its plan to acquire a majority ownership stake in Cornershop. Within six months of that announcement, in May 2020, Cornershop launched its grocery delivery service in the United States to capitalize on surging demand during the COVID-19 pandemic. But to satisfy Uber's desire to rapidly enter the U.S. grocery delivery market, Cornershop surreptitiously accessed Instacart's platform using digital scraping tools and copied thousands of copyrighted images, as well as product and pricing data, in willful violation of Instacart's Terms of Service ("TOS") and federal and state law. In July 2020, after discovering Cornershop's illegal conduct, Instacart filed suit against Cornershop in Texas, where Cornershop had launched.

This is not a case where Uber is a mere disinterested third party to the underlying action. Uber is the majority owner of Cornershop and the driving force behind Cornershop's rush to launch in the United States, made possible only by Cornershop's brazen theft and use of Instacart's intellectual property. Cornershop scraped Instacart's images and data to cut corners and rapidly build out Cornershop's U.S. platform—a critical step in Cornershop's U.S. launch and Uber's investment in grocery delivery service.

In fact, Cornershop launched in the United States by holding itself out to retailers, employees, and users as "[m]ajority owned by Uber."[1] Uber has similarly touted its "partnership" and "integration" with Cornershop in public statements.[2] Uber's strategic

---

[1] *See, e.g.* https://jobs.lever.co/cornershopapp/fd9b32ad-0a60-403c-aa2d-d04589bb3862

[2] *See, e.g.*, Press Release, *Uber Unveils Grocery Delivery* (July 7, 2020), https://investor.uber.com/news-events/news/press-release-details/2020/Uber-Unveils-Grocery-Delivery/default.aspx.

focus on Cornershop runs to the very highest level of the company. Uber's CEO Dara Koroshowski has repeatedly hyped Uber's acquisition of Cornershop in earnings calls,[3] public statements,[4] and on social media,[5] citing the "expected stickiness of grocery post-COVID" as the basis for Uber's decision to integrate its "product across the Cornershop, Uber and Uber Eats apps."[6] Uber even goes so far as to allow its customers to "order groceries through Uber and the Uber Eats app, ***with orders fulfilled by Cornershop***."[7]

It is beyond legitimate dispute that Uber has documents and information that are highly relevant to the underlying action. Furthermore, Instacart took great pains to draft an extremely narrowly tailored subpoena—with just six requests for production and deposition topics—to avoid any undue burden on Uber. Yet, Uber has not produced a single document or witness in response to Instacart's subpoena, and has declined to conduct a reasonable search for responsive documents, even though Instacart met-and-conferred with Uber and provided Uber with proposed search terms and date ranges in an effort to mitigate any claimed burden and avoid motion practice.

Instacart needs information regarding Uber's discussions and plans about Cornershop's rapid entrance into the U.S. market to properly develop its claims and damages theory. Time is of the essence due to the March 22, 2021 discovery deadline in the

---

[3] *See* Matt Newberg, Medium, *Uber Clones Instacart, Enters US Grocery Market* (May 13, 2020), https://medium.com/hngry/uber-clones-instacart-enters-us-grocery-market-21d280f39382 ("Uber CEO Dara Koroshowski made ten references to the [Cornershop] acquisition in its earnings call last Thursday").

[4] Press Release, *Uber to Acquire Majority Ownership in Cornershop* (Oct. 11, 2019), https://investor.uber.com/news-events/news/press-release-details/2019/Uber-to-Acquire-Majority-Ownership-in-Cornershop/default.aspx.

[5] https://twitter.com/dkhos/status/1280493097504223232?lang=en.

[6] Matt Newberg, Medium, *Uber Clones Instacart, Enters US Grocery Market* (May 13, 2020), https://medium.com/hngry/uber-clones-instacart-enters-us-grocery-market-21d280f39382

[7] Press Release, *Uber Announces Results for Second Quarter 2020* (Aug. 6, 2020), https://investor.uber.com/news-events/news/press-release-details/2020/Uber-Announces-Results-for-Second-Quarter-2020/default.aspx (emphasis added).

underlying action. Instacart respectfully moves this Court to order Uber to produce documents and a person most knowledgeable to testify regarding the following categories of information:

- Business models, forecasts, plans, financial documents, cost/benefit analysis, valuation of Cornershop's US operations, including the timing of Cornershop's entry into the U.S. market. **[RFPs & Deposition Topics 3, 4, 5]**
- The scraping of data or images by Cornershop, Cornershop's use of images, data, trademarks, or trade names without permission from their owners, and Uber's knowledge of the same. **[RFPs & Deposition Topics 1 & 2]**
- Uber's search for, collection, and production of documents in connection with this litigation. **[RFP & Deposition Topic 6]**

## II. BACKGROUND

### A. Cornershop illegally scrapes Instacart's product catalog to satisfy Uber's desire to quickly launch in the United States.

On October 11, 2019, Uber announced its plans to buy a majority stake in Cornershop.[8] According to media reports, the deal involved a reported $459 million for a 51% stake of Cornershop, putting Cornershop's overall valuation close to $1 billion.[9] While Uber's acquisition of Cornershop was pending regulatory scrutiny abroad, Cornershop's CEO publicly disclosed that Cornershop had "only 9 months of cash in the bank," and thus, "instead [of] focusing on building a better company, [Cornershop executives] spend a lot of our time deciding which parts of our plan to cut or delay because of the regulatory uncertainty we find ourselves in."[10] It turns out that Cornershop was not focused on building a better company because its business model was premised on stealing Instacart's product

---

[8] See "Uber to Acquire Majority Ownership in Cornershop" (October 11, 2019), available at https://investor.uber.com/news-events/news/press-release-details/2019/Uber-to-Acquire-Majority-Ownership-in-Cornershop/default.aspx

[9] See "Uber to Purchase Majority Stake in Cornershop for US$450 Million" (October 15, 2019), https://contxto.com/en/chile/uber-to-purchase-majority-stake-in-cornershop/

[10] Oskar Hjertonsson (@ohjertonsson), Twitter (March 21, 2020 at 8:01 pm), available at https://twitter.com/ohjertonsson/status/1241560624875720705.

catalog and repurposing it as Cornershop's own.

In the Spring of 2020, Cornershop launched operations in the United States and began offering grocery delivery services in Dallas and Miami. Parikh Decl. Ex. 1 (Cuevas Decl., Dkt. 29-1[11]) at ¶ 10. Shortly after Cornershop's U.S. launch, Instacart uncovered evidence that, rather than creating its own catalog—an investment that took Instacart millions of dollars and years of effort—Cornershop had stolen Instacart's. *See generally id.* Ex. 2 (Compl., Dkt. 1 at ¶ 5). Specifically, Cornershop used scraping tools, directly or through hired contractors, to illicitly access Instacart's platform and copy thousands of copyrighted images, as well as product and pricing data, which Cornershop then altered and posted to its own platform and passed off as its own intellectual property. *See id.* Uber's transaction with Cornershop closed in early-July 2020, just two months after Cornershop launched its services in Texas and Florida using Instacart's stolen intellectual property.[12]

**B. Instacart sues Cornershop to enjoin and seek redress for Cornershop's illegal theft of Instacart's copyrighted and proprietary data.**

Based on the foregoing facts, Instacart filed suit against Cornershop in the Eastern District of Texas, alleging both federal and state law hacking claims (under the Computer Fraud and Abuse Act ("CFAA") and the Texas Harmful Access by Computer Act ("THACA")); a breach of contract claim based on Cornershop's willful violation of Instacart's TOS; claims for copyright infringement and violation of the Digital Millennium Copyright Act ("DMCA"); and state law unfair competition and conspiracy claims. *See id.*

On September 25, 2020, the Eastern District of Texas entered a stipulated preliminary injunction prohibiting Cornershop and any other person or entity "in active concert or participation" with Cornershop from further scraping Instacart's platform or

---

[11] All docket references are to the underlying action*, Maplebear Inc. dba Instacart v. Cornershop Technologies, Inc. et. al*, Case No. 2:20-cv-00240-JRG (E.D. Tex.).

[12] See "Uber Unveils Grocery Delivery" (July 7, 2020), available at https://investor.uber.com/news-events/news/press-release-details/2020/Uber-Unveils-Grocery-Delivery/default.aspx

"using or displaying any . . . information . . . originating from scraping, at any time, any Instacart platform, on any platform operated by Cornershop or its affiliates," including those "parent" entities. *Id.* Ex. 3 (Stipulated P.I., Dkt. 53), at 2, 3. The preliminary injunction further ordered Cornershop to allow an expert to "forensically image all Instacart computer files, data, and information that Cornershop ***or any entity acting in active concert with Cornershop*** scraped or copied from an Instacart platform" so that those images and data could be fully remediated. *Id.* at 4–5 (emphasis added).

**C. Instacart seeks narrow discovery from Uber, but Uber refuses to produce documents or a witness for deposition.**

On October 14, 2020, Instacart served a subpoena for document production and deposition testimony on Uber seeking information relevant Uber's involvement and knowledge of Cornershop's illegal activities, Uber's business plans, financial documents, and valuations of Cornershop, and Cornershop's Uber-backed U.S. launch. *See id.*, Ex. 4 (subpoena). After Uber's counsel sought an extension to respond, Instacart agreed to a one-week extension, and thereafter extended the compliance date at Uber's request, so it could meet and confer with Uber regarding the specific legal and factual bases for its targeted discovery requests. *Id.* at ¶ 7.

Uber responded to the parties' initial meet-and-confer by asserting broad, vaguely articulated relevance and burden objections, declaring that Instacart should seek the requested information from Cornershop, and declining to produce any documents or testimony. *Id.* Ex. 5 (11.5.2020 Uber Resps. & Objs.). Instacart responded in writing, explained the relevance of its requests, and asked Uber to respond and produce documents. *Id.* Ex. 6 (11.16.2020 Ltr.). Uber then sent a response letter in which it again refused to produce any documents or information. *Id.* Ex. 7 (11.19.2020 Ltr). Uber did not deny that it has responsive information, but again objected on relevance and burden grounds, stating that Instacart should obtain the information from Cornershop. *Id.* On November 23, 2020, the parties again met and conferred, at which time Instacart addressed Uber's burden concerns

by offering to provide proposed search terms for Uber to utilize to conduct an email search in response to the subpoena. Instacart subsequently provided those proposed search terms on December 2, 2020. *Id.* Ex. 8 (12.2.2020 Ltr). Despite Uber's assurance that it would identify relevant document custodians and make a good-faith effort to agree on the scope of a search for responsive documents, Uber rebuffed Instacart's search terms in their entirety—again falsely claiming, as it did in its objections, that Instacart could obtain the requested information from Cornershop. *Id.* Ex. 9 (12.8.2020 Ltr.). Despite professing a willingness to "discuss more appropriate search terms," Uber has had nearly three months to respond to Instacart's subpoena and still has refused to produce a single document in response. *Id.*; see also *id.* Ex. 12.

Furthermore, as Instacart has repeatedly explained to Uber, the document requests and deposition topics in Instacart's subpoena cannot be satisfied by Cornershop or by any other source and are critical to Instacart's case against Cornershop. Indeed, Instacart ***has*** attempted to obtain the same information from Cornershop, which has employed the same stonewalling tactics used by its owner Uber. When Instacart asked Cornershop to produce information regarding Uber's financial projections and business plans for Cornershop, and Uber's involvement in Cornershop's scraping activities, Cornershop claimed that it "does not have the practical ability to obtain the documents and things sought from Uber, which operates independently from the Defendants." *Id.* Ex. 10 (Resp. to Rog. 19).

The information Instacart seeks from Uber regarding the scope of the Uber-Cornershop partnership and Uber's role in facilitating Cornershop's U.S. launch is directly relevant to Instacart's claims and the damages stemming therefrom. It is also necessary to ensure compliance with the remediation ordered in the preliminary injunction in the underlying action. Having been unable to resolve its dispute over the subpoena via meet and confer, Instacart brings the instant motion.

## III. STANDARD

Rule 45 subpoenas are subject to Rule 26, which recognizes that "[i]nformation is discoverable . . . if it is relevant to any party's claim or defense and is proportional to the needs of the case." Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment; *see also Waymo LLC v. Uber Techs., Inc*., No. 17-cv-00939-WHA(JSC), 2017 WL 2929439, at *2 (N.D. Cal. July 7, 2017) ("The scope of discovery under Rule 45 is the same as under Rule 26(b)."). The relevance standard is broad, encompassing any information "reasonably calculated to lead to the discovery of admissible evidence," which is "an intentionally broad mandate." *Brown Bag Software v. Symantec Corp.,* 960 F.2d 1465, 1470 (9th Cir. 1992) (citing Fed. R. Civ. P. 26(b)(1)). Upon the filing of a motion to compel, "[t]he party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Baykeeper v. Kramer Metals Inc*., 2009 WL 10671577 at *1 (CD. Cal Feb. 27, 2009) (citation omitted). "The recipient of a subpoena is required to exercise due diligence to make a reasonable inquiry for responsive records." *Sol v. Whiting*, No. CV-10-01061-PHX-SRB, 2014 WL 12519787, at *3 (D. Ariz. Sept. 9, 2014); *accord U.S. v. Lee*, No. 5:06 CR0424 JW, 2009 WL 1108697, at *2 (N.D. Cal. Apr. 24, 2009). "If no responsive documents exist, the responding party should so state with sufficient specificity to allow the Court to determine whether the party made a reasonable inquiry and exercised due diligence." *Sol*, 2014 WL 12519787, at *3 (internal quotations omitted).

## IV. ARGUMENT

### A. Uber's business models, forecasts, business plans, financial documents, variance analyses, valuations of Cornershop's U.S. operations, and the timing of Cornershop's entry into the U.S. market [RFPs & Deposition Topics 3, 4, 5]

Instacart seeks documents and testimony regarding Uber's business models, forecasts, business plans, budgets, variance analyses, and valuations for Cornershop, as well

as Uber's risk or benefit assessment associated with the timing of Cornershop's entry into the U.S. market. Parikh Decl. Ex. 4 (RFP and Deposition Topics 3, 4, 5).

These requests are relevant to Instacart's claims and damages. In addition to "actual damages" or lost profits, Instacart is entitled to Cornershop's "additional profits"—also known as disgorgement or unjust enrichment—for Cornershop's copyright infringement. 17 U.S.C. § 504(b); *see Aspen Tech., Inc. v. M3 Tech*., Inc., 569 F. App'x 259, 271 (5th Cir. 2014) ("copyright law permits the recovery of both lost profits *and* unjust enrichment"). One method of calculating a defendant company's unjust enrichment is by calculating the benefit conferred upon the defendant by the "head start" that the misappropriation of intellectual property afforded the defendant. *See Epic Sys. Corp. v. Tata Consultancy Servs. Ltd*., 980 F.3d 1117, 1130 (7th Cir. Aug. 20, 2020) (affirming a $140 million unjust enrichment verdict under a "head start" theory). Moreover, Instacart is entitled to Cornershop's indirect profits—i.e., "profits 'attributable' to the infringement" that may be awarded so long as there is a "nexus" between those profits and the infringement. *Straus v. DVC Worldwide, Inc*., 484 F. Supp. 2d 620, 645 (S.D. Tex. 2007). Such indirect profits include venture capital funding and the cash acquired by the sale of the infringing company, where the infringement "may have actually influenced the purchasing decisions." *Griffo v. Oculus VR, Inc*., 2018 WL 6265067, at *13 (C.D. Cal. Sept. 18, 2018).

Uber's business models, forecasts, business plans, budgets, variance analyses, and valuations for Cornershop will show the value Uber ascribed to Cornershop based on its ability to quickly enter the U.S. market—a feat that Cornershop was able to achieve only by misappropriating Instacart's catalog and presenting it as its own. Even apart from head start and indirect damages, Uber's valuation of Cornershop is relevant to estimating the value of Instacart's stolen intellectual property. *See DSC Commc'ns Corp. v. Next Level Commc'ns*, 929 F. Supp. 239, 246 (E.D. Tex. 1996) (where a company's assets "consist almost exclusively" of misappropriated IP, its "purchase price . . .may be the least speculative method" of calculating the value of that IP).

For these reasons, courts have routinely ordered defendants and third parties to produce the same types of documents requested by Instacart from Uber here. *See Bristol-Myers Squibb Co. v. Kite Pharma Inc.*, No. 2:19-MC-00055-SJO-KS, 2019 WL 8589409, at *4 (C.D. Cal. May 29, 2019) (holding that defendant had "sufficiently demonstrated both relevance and substantial need for deposition testimony related to [non-party's] plans for . . . product development" because it was relevant to damages.); *Waymo LLC*, 2017 WL 2929439, at *2 (in response to Uber's document requests, Waymo agreed to produce "business plans, strategic plans, operating plans, marketing plans, financial plans, sales plans, and investment plans for its ride-sharing business, including projections for revenue generation and profitability"); *Symantec Corp. v. Zscaler, Inc.*, No. 17-CV-04426-JST-TSH, 2019 WL 2288278, at *1-2 (N.D. Cal. May 29, 2019) (compelling production of documents exchanged with third party investors regarding "any valuations of [defendant-company] or the accused products" and rejecting defendant's argument that it had already produced detailed information "sufficient [for plaintiff] to prepare its damages case").

Uber has no legitimate objection to producing this information. Uber argues that "Instacart should first seek such business plans, forecasts, valuations, U.S. market-related information, and other discovery from Defendants [Cornershop]." Parikh Decl. Ex. 7 (11.19.2020 Ltr.) at 3. Instacart has already tried to obtain these documents from Cornershop, but Cornershop refused to produce it, in part on the basis that such information is within Uber's possession, custody, or control, and not Cornershop's. *Id.* Ex. 11 (12.3.2020 Mayer to Counsel Ltr.) at 2-4. Because Cornershop has failed to produce this information, Uber should be ordered to produce it. *See Deltona Transformer Corp. v. NOCO Co.*, No. C20-1012 RSM, 2020 WL 4057771, at *3 n.3 (W.D. Wash. July 20, 2020) (ordering production from third party where it "ha[d] not established that the information is equally available from [defendant] and [plaintiff] establishe[d] that [defendant] ha[d] not produced all relevant information").

Uber also asserts boilerplate proportionality or burden objections, but it does not bother to allege it has conducted a reasonable search for responsive information, let alone establish that the requested information is burdensome to produce. Indeed, when Instacart proposed search terms to help ease any claimed burden, Uber rejected those terms and failed to conduct any alternative search. It is not Instacart's obligation to tell Uber how to conduct a reasonable search. That is Uber's obligation, and Uber cannot so easily discard it. *See LG Display Co. v. Chi Mei Optroelectronics Corp.*, No. 08CV2408-L(POR), 2009 WL 223585, at *3 (S.D. Cal. Jan. 28, 2009) (ordering third party to "conduct a due diligent search and produce those documents that are responsive to Plaintiff's Subpoena."); *Sol*, 2014 WL 12518787, at *3. The Court should order Uber to produce documents and a 30(b)(6) witness in response to these requests.

### B. Cornershop's scraping and use of images, data, trademarks, or trade names without permission, and Uber's knowledge of the same [RFP & Deposition Topics 1 & 2]

Request and Deposition Topic 1 seeks discovery concerning "the scraping of data or images by, with the involvement of, at the behest of, or for the benefit of Cornershop, whether directly or indirectly, or Uber's knowledge of the same." Parikh Decl. Ex. 4 (RFP and Deposition Topic 1). Request and Deposition Topic 2 seeks discovery concerning "Cornershop's actual or contemplated use in the United States of images, data, trademarks, or trade names without permission from their owners, or Uber's knowledge of the same." *Id.* (RFP and Deposition Topic 2).

Uber does not seriously contest the relevance of these requests. Nor could it. Cornershop's illegal scraping scheme and misappropriation of Instacart's intellectual property, copyrighted images, and other data is at the heart of Instacart's substantive claims. Furthermore, Uber's knowledge of Cornershop's illegal activities is relevant to establishing the knowledge, willfulness, and intent elements of certain of Instacart's causes of action. *See, e.g.*, *U.S. v. Philips*, 477 F.3d 215, 219-223 (5th Cir. 2007) (The CFAA forbids "*intentional* unauthorized access" of protected computers) (emphasis added); *Energy*

*Intelligence Grp., Inc. v. Kayne Anderson Capital Advisors, L.P.*, 948 F.3d 261, 276 (5th Cir. 2020) (The DMCA prohibits "any person from *intentionally* removing or altering CMI if he or she knows or has reasonable grounds to know it would 'induce, enable, facilitate, or conceal' copyright infringement." (quoting 17 U.S.C. § 1202(b)) (emphasis added). Indeed, if Cornershop informed Uber of its scraping activities and use of Instacart images and data, that would prove Cornershop's knowledge and intent.

Likewise, the extent to which Uber had knowledge of or worked in concert with Cornershop to facilitate Cornershop's scraping is relevant. As detailed above, a preliminary injunction has been entered in the underlying action prohibiting Cornershop and "its officers, agents, servants, employees, and attorneys, and other persons . . . ***in active concert or participation***" from further scraping Instacart's platform or "[d]isplaying, publishing, reproducing, or distributing any copies or derivatives" of Instacart's images and catalog data. Parikh Decl. Ex. 3 (Stipulated P.I., Dkt. 53). Instacart is entitled to discovery to determine whether Uber participated in or worked in concert with Cornershop to facilitate the scraping and copying of Instacart's product catalog, and whether Cornershop has complied with the preliminary injunction order. *See Doe v. Trump*, 329 F.R.D. 262, 275 (W.D. Wash. 2018) (granting discovery "to assess Defendants' compliance with" injunction).

Uber asserts that it "has identified no knowledge by Uber of Cornershop's alleged scraping of images or pricing information from Instacart before the filing of the lawsuit," and "no knowledge by Uber of Cornershop's use of scraped Instacart images and prices before the filing of the lawsuit." Parikh Decl. Ex. 5 (Uber Resps. & Objs.) at 5–6. But Uber has failed to provide any information regarding its search and refused produce any witness to confirm those representations at deposition under oath. *See Sol*, 2014 WL 12519787, at *3 (ordering non-party recipient of a subpoena to produce a "declaration or affidavit" explaining the factual basis of his assertion that he had no responsive documents to ensure that he "complied with the subpoena by conducting a reasonable search of all active

accounts”). Furthermore, Uber appears to concede that it has information responsive to these requests that post-dates the filing of Instacart’s complaint in the underlying action, but it objects that such information is privileged. However, Uber “cannot carry [its] burden by mere ipse dixit assertions that the privilege applies and, instead, must provide more substantial proof of eligibility for the privilege.” *Sia Chue Yang v. Schwarzenegger*, No. C 09-2306 CW (JL), 2010 WL 11587074, at *8 (N.D. Cal. May 12, 2010). To substantiate its claims of privilege, Uber should be ordered to provide a privilege log. *See Carpenters Pension Tr. v. Lindquist Family LLC*, No. C-13-01063 DMR, 2014 WL 1569195, at *2 (N.D. Cal. Apr. 18, 2014) (“Any documents or portions of documents withheld on the basis of privilege must be described in a privilege log.”).

Accordingly, the Court should order Uber to produce information responsive to these requests. If Uber maintains that, after conducting a reasonably diligent search, it has no information responsive to these requests, then it should have no objection to describing the contours of its search and saying so under oath. And, if Uber is withholding relevant information on the basis of privilege, then it should be ordered to substantiate those privilege claims with a detailed privilege log.

**C. Uber’s search for, collection, and production of documents [RFP & Deposition Topic 6]**

Deposition Topic 6 seeks discovery concerning “Uber’s search for, collection, and production of documents in connection with this litigation,” and Request 6 seeks “all documents [the witness] relied on in preparing for the deposition.” Parikh Decl. Ex. 4 (RFP and Deposition Topic 6). Uber asserts boilerplate burden objections to these requests, declaring that it will not provide a witness for the deposition and that it has “no obligation to search for, collect, or produce documents in connection with the litigation, other than its obligations as a non-party to respond to the Subpoena.” *Id.* Ex. 5 (Uber Resps. & Objs.).

Uber’s objections are meritless. Uber has vaguely asserted its supposed lack of knowledge of Cornershop’s unlawful scraping activity, *see Id.* (Uber Resps. & Objs.) at 5–6,

but it has failed to provide any "specificity" regarding its search to allow Instacart or the Court to "determine whether [it] made a reasonable inquiry and exercised due diligence." *Sol*, 2014 WL 12519787, at *3. Uber should be required to present a witness who should be prepared to answer questions about its search for responsive information, and to produce any documents that the witness relies upon in preparing for deposition.

## V. CONCLUSION

For the foregoing reasons, Instacart respectfully requests that the Court grant its motion to compel discovery from Uber and compel Uber to comply with the subpoena issued on October 14, 2020.

Respectfully submitted,

Dated: January 12, 2021

KEKER, VAN NEST & PETERS LLP

By: */s/ Nicholas Goldberg*
SHARIF E. JACOB
NICHOLAS GOLDBERG
PUJA PARIKH