# EXHIBIT 7

O'Melveny

O'Melveny & Myers LLP
2765 Sand Hill Road
Menlo Park, CA 94025-7019

T: +1 650 473 2600
F: +1 650 473 2601
omm.com

File Number:

November 19, 2020

**Melody Drummond Hansen**
D: +1 650 473 2636
mdrummondhansen@omm.com

<u>**VIA E-MAIL**</u>

Sarah Salomon
Keker Van Nest & Peters
633 Battery Street
San Francisco, CA  94111-1809
ssalomon@keker.com

Re:   *Instacart Subpoena to Uber; Maplebear Inc. dba Instacart v. Cornershop Technologies, Inc., et al.*, Case No. 2:20-CV-00240-JRG (E.D. Tex.)

Dear Ms. Salomon:

I write in response to your November 16, 2020 letter regarding Uber's Responses and Objections ("Responses") to Instacart's November 5, 2020 subpoena to Uber (the "Subpoena").

As Uber's Responses explained, the Subpoena imposes an undue burden on Uber because, to the extent it seeks non-privileged information that is potentially relevant to the litigation, such information is equally available from the Cornershop Defendants.  Indeed, Defendants had a deadline on November 9 to produce "all documents . . . relevant to the claims and defenses." E.D. Tex. Dkt. No. 62.  Instacart had not reviewed such party discovery before seeking information from non-party Uber, which Uber submits would be the proper course of action.  The Subpoena otherwise seeks information that is not relevant or proportional to the needs of the case, or information that is privileged.  Your letter fails to substantively address Uber's objections, ignoring them, mischaracterizing them, and citing inapplicable cases, as discussed further below.

Your letter also incorrectly suggests that Uber's ownership interest in Cornershop means that Uber should not be treated as a non-party, stating without basis that Uber is no "stranger" to the litigation and is not an "innocent third party."  (Letter at 1.)  In our previous meet and confer, however, Instacart's counsel acknowledged that Uber is a non-party and Instacart's Subpoena is subject to Rule 45.  Rule 45 provides that as the subpoenaing party, Instacart and its attorneys "must take reasonable steps to avoid imposing undue burden or expense" on Uber, the subpoenaed non-party.  Your letter cites no factual or legal support for Uber to be treated otherwise.  The letter likewise fails to establish relevance or proportionality of the information sought from Uber, or to address Uber's concerns regarding burden, as discussed further below.



In further response to the specific topics raised in your letter:

**1. Instacart Seeks Irrelevant Information, Disproportionate to the Case (Issue No. 1)**

**Topic and Request Nos. 1 and 2** relate to alleged "scraping of data or images by, with the involvement of, at the behest of, or for the benefit of Cornershop, whether directly or indirectly, and Uber's knowledge of the same" and Cornershop's use of images, data, trademarks or trade names without their owners' permission. As an initial matter, your letter generally ignores the scope and vagueness objections that Uber made, including objections that Instacart seeks information regarding *any* "scraping" or use by Cornershop, not limited to Instacart or the accused activities relevant to the U.S. market.

Your letter, moreover, fails to identify any relevant, proportionate information in Uber's possession that is not available from Defendants. Your letter articulates two theories for the relevance of the information sought. But those theories show that the Subpoena Topics and Requests are not relevant or proportional. First, you claim that "Uber's knowledge" is relevant to the knowledge and intent elements of Instacart's claims. But only ***Cornershop*'s** knowledge and intent are relevant to Instacart's claims, and the source of Cornershop's knowledge is Cornershop. Second, you claim without basis or support that Uber's knowledge of Cornershop's accused activities is relevant to damages. It is unclear how that could be the case, and your letter provides no explanation.

**Topic and Request Nos. 3-5:** Your letter states that requests regarding "business models, forecasts, business plans, budgets, and variance analyses for Cornershop" and documents "regarding the past, present, and future value, whether actual or potential, of Cornershop's business and operations" and "[a]ny actual or potential benefits, costs, and/or risks, whether monetary or nonmonetary, associated with or concerning the timing of Cornershop's entry into the U.S. market" are relevant to Instacart's damages case. Again, Instacart ignores Uber's objections to the scope and vagueness of such requests. As one example, Instacart's request for information regarding "[a]ny actual or potential benefits, costs, and/or risks, whether monetary or nonmonetary" could encompass almost any document related to the transaction between Uber and Cornershop, given that acquisitions generally involve assessing some kind of "actual or potential benefits, costs, and/or risks." Limiting the Topic and Request to the "timing of Cornershop's entry into the U.S. market" does not help, including because this language also is vague, and it is unduly burdensome for Uber to scour all documents for any mention of such topics—especially when it is unlikely that Uber possesses non-privileged responsive information. As mentioned in our objections, to date, Uber has identified no knowledge of Cornershop's alleged scraping of Instacart images and price information before Instacart filed this lawsuit. Instacart ignores this burden and proportionality concern.

Your letter suggests that case law supports the relevance of seeking such documents from Uber. The cases cited, however, are inapposite. *Bristol-Myers Squibb Co. v. Kite Pharma Inc.* involved discovery sought from a non-party who acquired ***plaintiff*** and thus would later control the lawsuit and could claim damages based on its own lost profits. No. 2:19-MC-00055-SJO-

2



KS, 2019 WL 8589409, at *4 (C.D. Cal. May 29, 2019).  The court agreed that it would be "manifestly unfair if the [non-party], which will . . . control the underlying lawsuit when it acquires [plaintiff's parent company] later this year, could . . . claim damages based in part on the supposed future lost profits . . . but shield[] itself from discovery about" those lost profits.  *Id.*  No such concern is present here because Cornershop is a defendant, and Cornershop has ceased the accused activities under an agreed preliminary injunction.  There are no future profits to consider.  In both *Waymo* and *Symantec*, the court granted motions to compel a **party** to produce documents exchanged with a third party related to a potential investment.  *Symantec Corp. v. Zscaler, Inc.*, No. 17CV04426JSTTSH, 2019 WL 2288278, at *2 (N.D. Cal. May 29, 2019); *Waymo LLC v. Uber Techs., Inc.*, No. 17-CV-00939-WHA(JSC), 2017 WL 2929439, at *2 (N.D. Cal. July 7, 2017).  In *Waymo*, moreover, the court then quashed a subpoena to a third party seeking much of the same information sought from the party, noting that its order compelling the discovery from a party would obviate most of the third-party requests.  *Waymo*, 2017 WL 2929439, at *4.  Rather than supporting Instacart's Subpoena to Uber, these cases support Uber's position that Instacart should first seek such business plans, forecasts, valuations, U.S. market-related information, and other discovery from Defendants, and the Subpoena to Uber should be quashed.

      2.  **Instacart Seeks Information Equally Available from Defendants (Issue No. 2)**

Your letter apparently concedes (as it should) that Instacart should not seek from non-party Uber information and documents that it can obtain from Defendants in the litigation, by identifying information purportedly only in Uber's control.

In each instance where you identify information only purportedly available from Uber, however, Instacart fails to demonstrate that such information is relevant or proportionate to justify the burden on Uber.  As Uber's Responses explained, the Subpoena seeks to require Uber to undergo a laborious process of reviewing numerous documents for mention of vague categories of information, and logging and/or redacting numerous privileged documents that have little if any relevance, as discussed further below.

**Topics and Request Nos. 1 and 2:**  Your letter again wrongly claims that information regarding "Uber's knowledge" is relevant to Instacart's claims against Cornershop, and without addressing proportionality.  The portion of *UMG Recordings* cited in your letter addresses different types of knowledge of a **defendant** under the DMCA, and does not support the proposition that a **third party**'**s** knowledge is relevant to state a DMCA violation.  *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1025 (9th Cir. 2013).

**Topic and Request Nos. 3-5:**  Your letter claims that "Uber, not Cornershop, is most knowledgeable regarding the value of Cornershop's business **to Uber**."  (Letter at 4, emphasis added.)  Your letter fails to explain, however, why the value **to Uber** is relevant and proportionate to the needs of the case.  The value of Cornershop to Uber is reflected in the price it paid for its interests in Cornershop, which is (1) available from Defendants, and (2) publicly reported.  *Intel Corp.* is not on point, because it spoke only to the discoverability of third-party



information about the value of a patent in a patent infringement suit.  *Intel Corp. v. Prot. Capital LLC*, No. 13CV1685 GPC (NLS), 2013 WL 12313348, at *3 (S.D. Cal. Oct. 2, 2013).  Patent damages may be awarded in the form of a reasonable royalty for use of the claimed invention.  Valuations of patents are accordingly often found relevant.  *See Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, 2008 WL 928539, at *4 (N.D. Cal. Apr. 4, 2008).  Instacart's case does not involve a patent assertion, nor does Instacart's Subpoena seek a patent valuation.  Your letter fails to explain how *Intel* is relevant here.

Your letter then claims without explanation that Uber's burden objection is "inapplicable," when Uber objected to the burdens for each of these Topics and Requests, explaining that they would likely require Uber to interview numerous witnesses and review and redact numerous privileged documents, when such discovery is not relevant or proportionate.

As discussed above, Instacart also ignores the scope and vagueness objections Uber made.  Instacart fails to explain why the full scope of these Topics and Requests as issued are relevant and proportionate.

### 3.  Undue Burden Objections (Issue No. 3)

Uber's Responses explained why each of the Topics and Requests were unduly burdensome, including because (among other reasons) the requests are vague and overbroad, and they seek to impose burdens on Uber such as interviewing numerous witnesses, engaging in burdensome electronic discovery including searching for and reviewing documents, redacting privileged materials in documents, and logging numerous privileged documents, when discovery from Uber is not relevant to the claims and defenses of the parties, nor proportional to the needs of the case.

Your letter concludes without support that it is Uber's obligation under Rule 45 to conduct the unduly burdensome exercise that the Subpoena imposes.  To the contrary, Instacart has an obligation to first show that the information it seeks is relevant and proportional to the needs of the case, and Instacart has an obligation under Rule 45 not to unduly burden non-party Uber.

Your letter wrongly relies on Rule 45(e)(1)(D) to argue that it is **Uber's** obligation to show that "the information is **not reasonably accessible** because of undue burden or cost."  (Letter at 4.)  Rule 45(e)(1)(D), however, relates specifically to "*Inaccessible Electronically Stored Information*."  It does not apply to Uber's objections to the scope and burdens of Instacart's Subpoena in seeking to require Uber to undergo a costly and burdensome search for information that Instacart has not shown to be relevant, proportional, and unavailable from Defendants in the lawsuit.

As Uber also explained in response to Topic and Request Nos. 1 and 2, based on Uber's initial investigation, Uber has identified no knowledge by Uber of Cornershop's alleged scraping of Instacart's images or pricing information before Instacart's lawsuit, and documents on this topic post-dating the filing of the complaint are privileged.  The likelihood, therefore, of Uber



possessing responsive, non-privileged information is not commensurate with the burden imposed on Uber, especially considering the lack of relevance and proportionality.

4.  **Reasonable Search and "Discovery on Discovery" (Issue No. 4)**

Instacart puts the cart before the horse in accusing Uber of not conducting a "reasonable search."  First, Instacart must demonstrate that its Subpoena seeks relevant information proportional to the needs of the case, which Instacart has failed to do, while simultaneously asking Uber to prove a negative.  Second, Uber properly offered the findings of its inquiry in response to Instacart's subpoena based on the time allotted between the Subpoena and Response date.

In support of its Topic and Request No. 6, Instacart asserts without basis that it is entitled to explore the "contours of Uber's searches."  (Letter at 4.)  *United States v. Lee*, cited in your letter, merely states that a reasonable search is required, not that discovery about discovery is permissible.  No. 5:06 CR0424 JW, 2009 WL 1108697, at *2 (N.D. Cal. Apr. 24, 2009).

Instead, Topic and Request No. 6 call for improper "discovery about discovery."  A party generally is not entitled to discovery about another party's compliance with discovery requests because it is not reasonably calculated to lead to the discovery of admissible evidence.  *See, e.g.*, *Advante Int'l Corp. v. Mintel Learning Tech.*, 2006 WL 3371576, at *4 (N.D. Cal. Nov. 21, 2006) (denying motion to compel that sought discovery directed to whether all responsive documents were produced).  Instacart has not explained why it is entitled to such "discovery on discovery."

5.  **Alleged Incomplete Responses (Issue No. 5)**

In a rehash of its "unreasonable search" argument, Instacart demands without basis that Uber must disclose to Instacart what it has done to comply with the Subpoena.  Instacart must first explain why what it seeks is relevant and proportional.  It has failed to do so.

With respect to Uber's responses to Topic and Request Nos. 1 and 2 regarding its "search to date for responsive, non-privileged information," Uber has searched for information regarding Instacart's allegations of scraping of Instacart images and pricing information and has identified no responsive, non-privileged information.  Based on Uber's inquiry to date, Uber was not aware of Cornershop's alleged scraping before Instacart filed its lawsuit, and information related to Uber's knowledge after the lawsuit is privileged.

Instacart provides no basis to demand that Uber explain to Instacart exactly what it has done in response to the Subpoena.  To the contrary, such efforts are protected by attorney-client and work product privileges.



### 6. Privilege Objections (Issue No. 6)

As Uber explained in its objections, each of the Topics and Requests calls for privileged information. A subpoena that "requires disclosure of privileged or other protected matter" must be quashed. Fed. R. Civ. P. 45(d)(3)(A). Uber described the nature of such documents and information in its Responses. For example, Uber explained that the Topics and Requests seek "Uber's privileged information communicated by and with Uber's counsel before, during, or after its acquisition of Instacart; common interest information exchanged with Cornershop's counsel; as well as privileged Information regarding the Lawsuit." Uber also explained that Instacart's Subpoena seeks to require Uber to engage in burdensome review, redaction, and logging of documents.

As Instacart well knows, transactions like Uber's investment in Instacart involve many privileged communications, including communications among Uber's inside counsel and with outside counsel before, during, and after negotiations. They involve common interest information exchanged among counsel. Instacart's requests, moreover, seek privileged information in Uber's possession post-dating the filing of the lawsuit.

Your letter assumes that Uber should be required to engage in a laborious process of reviewing, redacting, and logging the numerous privileged documents *before* Instacart establishes the relevance and proportionality of such information and documents. The burden of such an exercise is part of Uber's objection to the Subpoena and is especially unwarranted where Instacart has failed to demonstrate that the information it seeks, to the extent not privileged, could not be obtained from the defendants.

We are available to meet and confer with Instacart regarding these matters. I will send my availability to meet and confer on Friday, November 20.

Regards,

DocuSigned by:
*Melody Drummond Hansen*
220CCB3D25724EC...

Melody Drummond Hansen
of O'MELVENY & MYERS LLP