# EXHIBIT 9



O'Melveny & Myers LLP
2765 Sand Hill Road
Menlo Park, CA 94025-7019

T: +1 650 473 2600
F: +1 650 473 2601
omm.com

File Number:

December 8, 2020

**Melody Drummond Hansen**
D: +1 650 473 2636
mdrummondhansen@omm.com

<u>**VIA E-MAIL**</u>

Sarah Salomon
Keker Van Nest & Peters
633 Battery Street
San Francisco, CA  94111-1809
ssalomon@keker.com

Re:   *Instacart Subpoena to Uber; Maplebear Inc. dba Instacart v. Cornershop Technologies, Inc., et al., Case No. 2:20-CV-00240-JRG (E.D. Tex.)*

Dear Ms. Salomon:

I write in response to your December 2, 2020 letter regarding proposed search terms to potentially search for e-mail in response to Instacart's November 5, 2020 subpoena to Uber (the "Subpoena").

We are working in good faith with Instacart to agree on the scope of a search for responsive information.  We appreciate your offer of proposed e-mail search terms, but the terms you proposed are inappropriately broad and expected to result in an inordinate number of irrelevant search hits, imposing unnecessary review burdens on non-party Uber.

In the first instance, several proposed terms have no relation to Uber's knowledge (or lack thereof) of Cornershop's alleged scraping of Instacart, which is the primary category of documents for which Uber proposed an e-mail search as an appropriate method for locating relevant documents, if any.

Moreover, for the terms that appear to seek documents regarding Uber's knowledge of relevant scraping activity, Instacart's proposed search strings are drafted in such a way as to be likely to result in thousands (if not more) of false-positive results.  Instacart, for example, asks Uber to search various terms within 50 or 100 words of another term. Search strings with such proximity "limiters" are unlikely to meaningfully detect any relevant linkage between the terms included in the strings.  The term directed at "risk / benefit / cost" of the timing of Cornershop's entry into the U.S. market—which we had agreed to consider for a reasonable search—is similarly overbroad, including a search of Cornershop within 100 words of other common terms, and likely to result in a large volume of irrelevant results.

Instacart's time period is overly broad as well, as it seeks documents through the present.  The end point for the search should be Instacart's filing of the lawsuit, after which any Uber knowledge of Cornershop's alleged scraping of Instacart calls for privileged information—and



the relevance or proportionality of Instacart's other requested categories are even more attenuated.

Instacart's terms simply are not appropriately tailored to yield documents likely to be relevant and proportionate to the needs of Instacart's litigation against Cornershop.  They also are not crafted to seek documents solely in Uber's custody that are not also in the control of the Cornershop Defendants.  These are merely examples of the overbreadth of Instacart's terms, and Uber may identify additional concerns.  Uber remains willing to discuss more appropriate search terms, including proposing revisions to Instacart's proposed terms that are more likely to lead to discovery of relevant documents proportionate to the needs of the case (if any).

With respect to Instacart's request that Uber conduct a targeted search for documents responsive to certain requests proffered by Instacart, Uber remains willing to discuss the proper scope and objective of any such search in an effort to resolve the parties' disputes regarding the Subpoena.

We are available to meet and confer with Instacart regarding the search terms and next steps.

                                                    Regards,

*Melody Drummond Hansen*

                                                    Melody Drummond Hansen
                                                    Partner
                                                    of O'MELVENY & MYERS LLP