# EXHIBIT 11

# MORRISON | FOERSTER

755 PAGE MILL ROAD
PALO ALTO
CALIFORNIA 94304-1018

TELEPHONE: 650.813.5600
FACSIMILE: 650.494.0792

WWW.MOFO.COM

MORRISON & FOERSTER LLP

BEIJING, BERLIN, BOSTON,
BRUSSELS, DENVER, HONG KONG,
LONDON, LOS ANGELES, NEW YORK,
NORTHERN VIRGINIA, PALO ALTO,
SAN DIEGO, SAN FRANCISCO, SHANGHAI
SINGAPORE, TOKYO, WASHINGTON, D.C.

December 3, 2020

Writer's Direct Contact
+1 (650) 813.5990
CRMayer@mofo.com

VIA EMAIL

Sharif E. Jacob
Keker Van Nest & Peters
633 Battery Street
San Francisco, CA 94111
sjacob@keker.com

Re: *Maplebear Inc. dba Instacart v. Cornershop Technologies, Inc.*, No. 2:20-cv-240-JRG (E.D. Tex.)

Dear Counsel:

Cornershop writes in response to Instacart's November 19, 2020 letter.

Instacart repeats many of the same alleged deficiencies in Cornershop's discovery responses and production that the parties discussed on October 26 and 27, 2020. Based on these prior discussions and Instacart's choice not to raise these issues in its motion to compel, we viewed these issues as resolved and are surprised to see them reappear in your letter.

Nevertheless, Cornershop addresses Instacart's various issues (old and new) below.

**Cornershop's Responses to Instacart's Second Set of Interrogatories**

**Issue No. 1 – "Boilerplate" objections to definitions.** As Cornershop previously explained in its October 22, 2020 letter and during the parties' meet-and-confers, Instacart has sued three entities: Cornershop Technologies, Inc., Cornershop Technologies LLC, and Delivery Technologies US, Inc.

To the extent that activities by other Cornershop entities affect the operations of the three named defendants, Cornershop has not withheld any information on the basis that employees, agents, or contractors of another Cornershop entity performed those activities. There thus is no legitimate dispute regarding Instacart's "Issue No. 1."

**Issue No. 2 – Alleged incomplete responses.** Instacart mischaracterizes both Cornershop's interrogatory responses and its witnesses' deposition testimony.

sf-4381379

MORRISON | FOERSTER

Sharif E. Jacob
December 3, 2020
Page Two

In its responses to Interrogatory Nos. 17 and 19, Cornershop explained that its "Catalog Quality Team located in Chile received files from DataWeave including image URLs and processed the files to publish on Cornershop's platform through Amazon Web Services." Jefferson Lizarzabal's testimony is fully consistent with that representation. That Neil Bronfin may have had access to the FTP account with DataWeave's data is not to the contrary. The same is true for Jaleah Colon's testimony that she uploaded catalog information for certain "specialty stores," which are different than the limited virtual storefronts that used Instacart-sourced information.

Instacart also falsely accuses Cornershop of withholding information regarding "which Instacart user names and email addresses DataWeave used to access [Instacart]." Cornershop's supplemental response to Interrogatory No. 14 identified every account created by Cornershop for DataWeave. Instacart overlooks that, because Cornershop does not control DataWeave's specific scraping activities, Cornershop lacks information regarding which specific accounts (if any) DataWeave actually used. Instacart also mistakenly assumes that Cornershop must still possess any Instacart-sourced information that it received from DataWeave. Cornershop's policy during that timeframe was not to retain DataWeave's deliverables containing data sourced from U.S. retailers after receiving and processing them.

**Issue No. 3 – Responses invoking FRCP 33(d).** Cornershop will supplement its responses to Interrogatory Nos. 18 and 23 to identify responsive documents produced after its original response. As for Interrogatory No. 21, Cornershop identified a single responsive document. If Instacart has specific questions about the document, please let us know.

**Issue No. 4 – Privilege.** The parties have already agreed to exchange privilege logs by February 5, 2021. (Dkt. 64 at 3.)

**Cornershop's November 9, 2020 Letter Regarding Its Document Production**

**Issue No. 1 – Documents not within Cornershop's possession, custody, or control.** As Cornershop previously explained in its November 9, 2020 letter, it does not control either DataWeave or Uber. Cornershop is not sufficiently related to either company "such that it 'has the practical ability to obtain the documents [sought] . . .' from such third parties." *Semcon IP Inc. v. Louis Vuitton North America, Inc.*, No. 19-cv-122-JRG, Order (Dkt. 68, May 8, 2020) (quoting *Diamond Consortium, Inc. v. Manookian*, 16-cv-94-ALM, 2017 WL 3301527, at *9 (E.D. Tex. Aug. 3, 2017). Although Uber owns 55% of Cornershop Global LLC, Cornershop and Uber do not share officers or employees, and Uber was not involved in the accused scraping activities. And while Cornershop has an agreement with DataWeave, DataWeave is not contractually obligated to provide documents to Cornershop.

sf-4381379

**MORRISON | FOERSTER**

Sharif E. Jacob
December 3, 2020
Page Three

Moreover, Cornershop understands that Instacart has already served third-party subpoenas on both DataWeave and Uber. Those requests presumably capture desired documents that are within those parties' possession, but not Cornershop's.

**Issue No. 2 – "Boilerplate" objections to definitions.** *See* "Issue No. 1" related to interrogatories, above.

**Issue No. 3 – "Boilerplate" relevance objections.** Instacart's complaints here are premature. Cornershop expects that its e-mail production pursuant to the Court's ESI order (Dkt. 77) will obviate many (and perhaps even all) of Instacart's complaints. Cornershop therefore encourages Instacart to await that production to see if it addresses Instacart's alleged issues.

Nevertheless, Cornershop notes that it has not withheld information concerning scraping or its U.S. launch on the basis that the conduct occurred outside the U.S. Regarding user access logs, Instacart has produced its user event logs showing user access to product pages, including product pages that used Instacart-sourced information. *See* CS00066710 (viewed_product), CS00066711 (us_users), CS00066705 (added_product), CS00067791 (us_product_catalog), CS00069103 (viewed_product).

**Issue No. 4 – Privilege.** *See* "Issue No. 4" related to interrogatories, above.

**Cornershop's Document Production**

As noted above, Cornershop expects that its e-mail production pursuant to the Court's ESI order (Dkt. 77) will obviate many or all of Instacart's complaints. Cornershop nevertheless addresses certain of Instacart's specific issues below.

<u>.CSV files with scraped Instacart data</u>. Cornershop did not retain the .csv files received from DataWeave containing Instacart data as part of its ordinary operations. Nevertheless, Cornershop understands that DataWeave will be producing the .csv files that it delivered to Cornershop. Accordingly, this issue is moot.

<u>CloudFront access logs.</u> Osvaldo Mena previously testified regarding the burden of parsing CloudFront data, which is not sorted or filtered by geographic location. *See* Mena Tr. 142:5-23. Cornershop has produced other user event logs identifying users who accessed Cornershop product pages, including any product pages that displayed images sourced from Instacart. *See* CS00066710 (viewed_product), CS00066711 (us_users), CS00066705 (added_product), CS00067791 (us_product_catalog), CS00069103 (viewed_product). The burden of additionally producing the CloudFront logs far outweighs its probative value.

sf-4381379

**MORRISON | FOERSTER**

Sharif E. Jacob
December 3, 2020
Page Four

<u>Documents concerning Uber's acquisition of Cornershop</u>.  Instacart offers nothing to support its statement that "[i]t is beyond legitimate dispute that documents concerning Uber's acquisition of Cornershop are relevant to this case."

For clarity:  Instacart filed suit over *Cornershop's* scraping of Instacart data.  Instacart neither has alleged nor could plausibly allege that Uber had input, direction, and control over that scraping or that Uber's business relationship with Cornershop somehow involves Instacart data.  Instacart's requests are transparently intended to harass Uber, an investor in Cornershop and a non-party.

Nevertheless, Cornershop expects that any communications with Uber that are relevant to the issues in this suit will be produced via e-mail production under the ESI order.

<u>Documents relating to Cornershop's non-Instacart images.</u>  Cornershop has produced the images sourced from Instacart.  Cornershop also has produced its agreements with third parties relating to acquiring and licensing images not sourced from Instacart.  *See* CS00067794, CS00067798.  For these reasons, it is unclear what Instacart believes is missing.

<u>Retailer complaints.</u>  Cornershop has already produced cease-and-desist letters received from retailers.  *See, e.g.*, CS00069060, CS00069063, CS00069065, CS00069077, CS00069080, CS00069082, CS00069093, CS00069096.  Cornershop also will search for and produce documents detailing support tickets it has received from retailers.

<u>Contracts with retailers.</u>  Cornershop has already produced a list of all virtual storefronts associated with physical stores in the U.S.  CS00066741.  If Cornershop has since entered into a written agreement with the six specific retailers at issue in this case, Cornershop will search for and produce them.

It remains unclear how Cornershop's contracts with other retailers are necessary and relevant to Instacart's claims in this case.  If Instacart believes they are, please provide that position in writing for our consideration.

<u>Sales or revenues forecasts or projections.</u>  Cornershop has already produced its actual sales data and financials for the United States in 2020.  It remains unclear why Instacart requires sales and revenues forecasts or projections beyond the information already produced.  If Instacart believes they are necessary and relevant, please provide that position in writing for our consideration.

<u>Organizational charts.</u>  Cornershop does not maintain formal organization charts of the type Instacart seeks in the ordinary course of business.  If, in the course of searching and

sf-4381379

MORRISON | FOERSTER

Sharif E. Jacob
December 3, 2020
Page Five

collecting other responsive documents, Cornershop locates informal organizational charts for its personnel, Cornershop will produce them.

<u>Board meeting materials and minutes.</u>  Cornershop has already produced board meeting presentations relating to its U.S. operations.  *See* CS00068921, CS00068964, CS00069009, CS00069016, CS00069047.

<u>Agreements concerning defendants.</u>  Cornershop has already produced at least one agreement involving one of the named Cornershop entities and another Cornershop entity.  It will search for and produce additional agreements that involve the named Cornershop entities and other Cornershop entities.  *See* CS00066667.  No written agreements exist between (i) Cornershop Technologies, Inc. and Cornershop Technologies LLC, (ii) Cornershop Technologies, Inc. and Delivery Technologies US, Inc., and (iii) Cornershop Technologies LLC and Delivery Technologies US, Inc.

Sincerely,

/s/ *Colette Reiner Mayer*

Colette Reiner Mayer

sf-4381379