DAVID R. EBERHART (S.B. #195474)
deberhart@omm.com
MEGAN HAVSTAD (S.B. #287938)
mhavstad@omm.com
ANDREW M. LEVAD (S.B. #313610)
alevad@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, California  94111-3823
Telephone:  (415) 984-8700
Facsimile:   (415) 984-8701

MELODY DRUMMOND HANSEN (S.B. #278786)
mdrummondhansen@omm.com
O'MELVENY & MYERS LLP
2765 Sand Hill Road
Menlo Park, CA 94025
Telephone:  (650) 473-2600
Facsimile:   (650) 473-2601

Attorneys for Uber Technologies, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAPLEBEAR INC. DBA INSTACART,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC.,<br><br>Defendant. | Misc. Case No. 3:21-mc-80007<br><br>[underlying action: United States District Court for the Eastern District of Texas, Case No. 2:20-cv-00240-JRG]<br><br>**DEFENDANT UBER TECHNOLOGIES, INC.'S OPPOSITION TO PLAINTIFF MAPLEBEAR INC. DBA INSTACART'S MOTION TO COMPEL COMPLIANCE WITH SUBPOENA** |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................. 1

II. FACTUAL BACKGROUND ................................................................................................ 3

III. LEGAL STANDARD ............................................................................................................ 5

IV. ARGUMENT ......................................................................................................................... 5

    A. Requests and Topics 1 Through 5 Seek Information Available from a Party. ......................................................................................................................... 6

    B. Requests and Topics 3, 4, and 5 Seek Irrelevant Documents and Testimony Disproportionate to the Needs of the Case. ............................................................... 8

    C. Requests and Topics 1 and 2 Seek Irrelevant Documents and Testimony Disproportionate to the Needs of the Case. ............................................................. 10

    D. Instacart Improperly Seeks Privileged Information and to Burden Uber with Logging Irrelevant Information. ...................................................................... 12

    E. Request and Topic 6 Are Improper. ........................................................................ 12

    F. Instacart Failed to Sufficiently Meet and Confer Before Moving to Compel. ........ 13

V. CONCLUSION .................................................................................................................... 13

# TABLE OF AUTHORITIES

Page

**CASES**

*Advante Int'l Corp. v. Mintel Learning Tech.*,
  2006 WL 3371576 (N.D. Cal. Nov. 21, 2006) .................................................................. 13

*Audio MPEG, Inc. v. HP Inc.*,
  2017 WL 950847 (N.D. Cal. Mar. 10, 2017) .................................................................... 11

*Bristol-Myers Squibb Co. v. Kite Pharma Inc.*,
  2019 WL 8589409 (C.D. Cal. May 29, 2019) .................................................................. 10

*Deltona Transformer Corp. v. NOCO Co.*,
  2020 WL 4057771 (W.D. Wash. July 20, 2020) ................................................................ 7

*Doe v. Trump*,
  329 F.R.D. 262 (W.D. Wash. 2018) ................................................................................. 11

*DSC Commc'ns Corp. v. Next Level Commc'ns*,
  929 F. Supp. 239 (E.D. Tex. 1996) ..................................................................................... 9

*Epic Sys. Corp. v. Tata Consultancy Servs. Ltd.*,
  980 F.3d 1117 (7th Cir. 2020) ............................................................................................ 8

*Franklin v. United States*,
  2013 WL 11336864 (D.N.M. Aug. 28, 2013) .................................................................. 11

*Genus Lifesciences Inc. v. Lannett Co.*,
  2019 WL 7313047 (N.D. Cal. Dec. 30, 2019) ................................................................ 5, 7

*Glass Egg Dig. Media v. Gameloft, Inc.*,
  2019 WL 4166780 (N.D. Cal. Sept. 3, 2019) .................................................................. 6, 7

*Griffo v. Oculus VR, Inc.*,
  2018 WL 6265067 (C.D. Cal. Sept. 18, 2018) ................................................................... 9

*Legal Voice v. Stormans, Inc.*,
  738 F. 3d 1178 (9th Cir. 2013) ......................................................................................... 14

*Lemberg Law LLC v. Hussin*,
  2016 WL 3231300 (N.D. Cal. June 13, 2016) .................................................................... 5

*LG Display Co. v. Chi Mei Optroelectronics Corp.*,
  2009 WL 223585 (S.D. Cal. Jan. 28, 2009) ........................................................................ 7

*Maplebear Inc. dba Instacart v. Cornershop Technologies, Inc. et al.*,
  Case No. 2:20-cv-00240-JRG (E.D. Tex.) .......................................................................... 1

*Nidec Corp. v. Victor Co. of Japan*,
  249 F.R.D. 575 (N.D. Cal. 2007) ........................................................................................ 6

*Optimize Tech. Sols., LLC v. Staples, Inc.*,
  2014 WL 1477651 (N.D. Cal. Apr. 14, 2014) .................................................................... 5

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Ow v. United States*,
  2018 WL 6267839 (N.D. Cal. June 12, 2018) .................................................................. 6

*Symantec Corp. v. Zscaler, Inc.*,
  2019 WL 2288278 (N.D. Cal. May 29, 2019) ................................................................ 10

*United States v. Lee*,
  2009 WL 1108697 (N.D. Cal. Apr. 24, 2009) ................................................................ 13

*VirnetX, Inc. v. Apple Inc.*,
  2014 WL 6979427 (N.D. Cal. Mar. 21, 2014) .................................................................. 6

*Waymo LLC v. Uber Techs., Inc.*,
  2017 WL 2929439 (N.D. Cal. July 7, 2017) ................................................................... 10

**RULES**

Civ. L.R. 37-1(a) ...................................................................................................................... 2, 5

Fed. R. Civ. P. 26(b)(1) ............................................................................................................... 11

Fed. R. Civ. P. 37 .......................................................................................................................... 5

Fed. R. Civ. P. 45 ...................................................................................................................... 5, 7

Fed. R. Civ. P. 45(d)(1) ................................................................................................................. 1

Fed. R. Civ. P. 45(d)(2)(B)(ii) ..................................................................................................... 14

Fed. R. Civ. P. 45(d)(3)(A) ..................................................................................................... 5, 12

Fed. R. Civ. P. 45(d)(3)(A)(iv) ................................................................................................. 5, 7

Fed. R. Civ. P. 45(d)(3)(B) ........................................................................................................... 5

Uber Technologies, Inc. ("Uber") respectfully opposes the Motion to Compel of Maplebear Inc. dba Instacart ("Instacart") on its subpoena to Uber related to *Maplebear Inc. dba Instacart v. Cornershop Technologies, Inc. et al.*, Case No. 2:20-cv-00240-JRG (E.D. Tex.).[1]

## I. INTRODUCTION

Instacart's motion is premature, an attempted end run around the underlying Eastern District of Texas litigation rules and procedures, and a misuse of judicial resources.

Without exhausting the availability of party discovery in the underlying litigation, Instacart launched this parallel hunt for overlapping documents, thousands of miles away, against a non-party, in a forum unfamiliar with Instacart's claims and allegations, or the status of discovery in that case. Indeed, Instacart's subpoena seeks information available from defendant Cornershop in the Texas litigation—yet Instacart subpoenaed Uber before even receiving Cornershop's first email production. What's more, just six days before filing the instant motion in California, Instacart filed a still-pending motion to compel in Texas against Cornershop for the same types of documents and information it seeks to compel from non-party Uber here. This burdensome, inefficient gun-jumping is inconsistent with the Federal Rules of Civil Procedure. The Court should deny Instacart's motion for multiple reasons.

*First*, the subpoena seeks information exchanged between Cornershop and Uber that Instacart must obtain from Cornershop. It seeks, for example, information about (1) Cornershop's valuation, business plans, and historical performance, exchanged between Uber and Cornershop (Requests and Topics 3, 4, and 5) and (2) Cornershop communications with Uber regarding Cornershop's alleged "scraping" of Instacart's website (Requests and Topics 1 and 2). Instacart is required to seek such information from Cornershop first, to avoid imposing an undue burden on non-party Uber. *See, e.g.*, Fed. R. Civ. P. 45(d)(1). Instacart's attempt to paint Uber as more than a "mere disinterested third party" (Mot. at 2) is meritless: Uber is not a party. Instacart should allow the Texas court to determine the scope of Cornershop's discovery obligations in the underlying litigation, and then identify what (if any) additional relevant documents Uber

---

[1] The defendants in the underlying matter are Cornershop Technologies, Inc., Cornershop Technologies LLC, and Delivery Technologies US, Inc. (collectively, "Cornershop").

possesses that are proportionate to the needs of the case. There is still ample time for discovery, as the discovery cutoff is still months away.

*Second*, the subpoena seeks information that is either irrelevant or of such tenuous relevance that the burdens on Uber to search for responsive information are greatly disproportionate to the needs of the case. Instacart does not attempt to defend the subpoena as written—nor could it, as it seeks information clearly irrelevant to the case, on topics such as Cornershop's scraping of any site anywhere in the world, and/or Cornershop's use in the United States of any data, tradenames or trademarks without permission from their owners, without limitation to Instacart. Instacart's overreach further is shown by the search terms that it proposes for Uber's documents, which seek terms within 100 words of other terms, and its strained attempt to link Uber's alleged "knowledge" of Cornershop's behavior to any issue in the case. Also, as Uber has told Instacart, Uber searched for and found no evidence of pre-suit knowledge of Cornershop's alleged scraping of Instacart, and Instacart's motion fails to establish any legal relevance of such knowledge even if Uber had found it. Instacart seeks to put the burden on Uber to prove a negative, and an irrelevant one at that.

*Third*, Instacart's broad requests encompass privileged information unrelated to the underlying lawsuit, created before, during, and after Uber's investment in Cornershop, as well as communications regarding the underlying case. The Court should not compel disclosure of this privileged information, and Uber should not be compelled to provide a log before the appropriate scope of discovery is determined.

*Fourth*, Instacart's request for documents and testimony about Uber's search for, collection, and production of documents is improper discovery about discovery.

*Finally*, despite Uber's valid objections, Uber engaged in good-faith negotiations to seek a compromise with Instacart, including agreeing to conduct targeted searches and proposing search terms. But Instacart wanted no such compromise. Instead, in violation of Civil Local Rule 37-1(a), Instacart ignored Uber's correspondence for three weeks before declaring an impasse and moving to compel.

## II.   FACTUAL BACKGROUND

In 2019, Uber began considering an investment in Cornershop, an online platform for ordering groceries for delivery based in Chile, with a presence in Latin America and Canada. *See* Mot. at 2 n.2 and Mot. at 4 n.8; *see also* Parikh Decl. Ex. 1 ¶¶ 1-2. After months of negotiations, Uber announced in October 2019 that it would acquire an interest in Cornershop. Mot. at 4 n.8. On July 6, 2020, Uber entered into an agreement with Cornershop and became a 51% investor. *Id.* at 2 n.2.

On July 16, 2020—just months after Cornershop entered the United States in competition with grocery delivery giant Instacart—Instacart filed its Texas complaint against Cornershop. Instacart alleges that Cornershop "scraped" certain images and pricing information from Instacart's website (which Instacart allegedly discovered in May 2020) and that Cornershop changed certain image filenames. Parikh Decl. Ex. 2 (Compl.) ¶¶ 2-4, 78. The alleged copied images include, for instance, photographs of chicken quarters and containers of hummus. *Id.* ¶ 9. On September 23, 2020, the parties stipulated to a preliminary injunction, later entered by the court, prohibiting Cornershop's sourcing of images from Instacart. *Id.* Ex. 3.

Before the parties had produced any emails in the underlying action, Instacart subpoenaed Uber seeking a broad range of documents and a deposition related to Uber's valuation of Cornershop, Cornershop's business plans, and Uber's knowledge of Cornershop's alleged "scraping"—not only of Instacart but any other company, and any other unauthorized use of others' content by Cornershop. Parikh Decl. Ex. 4.

As Uber has explained to Instacart, based on Uber's search to date, Uber was not aware of Cornershop's alleged "scraping" of images or price information from Instacart at any point before Instacart sued Cornershop. *Id.* Ex. 7 at 5. Accordingly, Uber could not have considered and did not consider any such "scraping" when evaluating Cornershop before making its investment. Uber also explained that Instacart's requests are overly broad and burdensome because they are not tailored to the case, and they seek information available from Cornershop. *Id.* Ex. 7 at 2-5. Uber also explained that it would be burdensome to search for Instacart's vague categories, which include (for example), "[a]ny actual or potential benefits, costs, and/or risks, whether monetary or

nonmonetary, associated with or concerning the timing of Cornershop's entry into the U.S. market." *Id.* Ex. 4 at 3-5. And Uber explained that responding to such requests would require searching through many privileged documents and logging and redacting for privilege—all when there was very little chance of uncovering anything of relevance to the case. *Id.* Ex. 7 at 6.

The parties engaged in multiple meet and confers, and despite its objections, Uber agreed to consider search terms as a way to reduce the burden, clarify what Instacart was seeking, and potentially reach a compromise. *Id.* Ex. 9. When Instacart proposed broad search terms, however, it became evident that Instacart does not seek tailored information: Instacart proposed search terms with words like "Cornershop" within **100 words** of other common terms. *Id.* Ex. 8. Just one of Instacart's overly broad terms (seeking any document that contains both the word "Cornershop" and any one of the words "Texas" or "Dallas" or "Florida" or "Miami" or "launch*") results in 4,700 documents for review. *Id.* Ex. 12 at 1. Uber offered to propose more reasonable terms, to conduct targeted searches, and to further meet and confer. *Id.* Ex. 12 at 1-4.

Instacart failed to respond for three weeks, then declared an "impasse" on December 29. *Id.* Ex. 12 at 6. In a further attempt to reach agreement, on December 31, Uber sent proposed search terms more tailored to uncover relevant documents, to the extent that any exist. *Id.* Ex. 12 at 4. Another week later, Instacart said (without explanation) that Uber's terms were unacceptably narrow, and that it would be filing this motion to compel. *Id.* Ex. 12 at 1 & 3.

Instacart has a pending motion to compel against Cornershop in the underlying action. Drummond Hansen Decl. Ex. B. Instacart seeks from Cornershop some of the same types of documents Instacart seeks from Uber, including:

- All valuations of Cornershop, including past, current, or forecasted valuations, and valuations of any discrete segments (e.g., US versus OUS), and all documents cited in and/or supporting those valuations.

- All business plans, projections, forecasts, and market analyses prepared or used in connection with Uber's investment and/or acquisition.

- All documents that mention or discuss the timing of Cornershop's launch in the US or any US market, and/or any importance or value associated with time to market.

- All documents mentioning Instacart prepared or used in connection with Uber's investment and/or acquisition.

- All documents mentioning scraping and/or sourcing data from competitors prepared or used in connection with Uber's investment and/or acquisition.

*Id.* Ex. C at 4.

### III.   LEGAL STANDARD

Federal Rule of Civil Procedure 45 governs how information may be obtained from a non-party. Under Rule 45, a court must quash or modify a subpoena that "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). "The Ninth Circuit has long held that nonparties subject to discovery requests deserve extra protection from the courts." *Lemberg Law LLC v. Hussin*, 2016 WL 3231300, at *5 (N.D. Cal. June 13, 2016). The party issuing the subpoena must demonstrate that the information sought is "relevant and material to the allegations and claims at issue in the proceedings." *Optimize Tech. Sols., LLC v. Staples, Inc.*, 2014 WL 1477651, at *2 (N.D. Cal. Apr. 14, 2014). When the issuing party has "not shown [that it] attempted to obtain documents from the [opposing party] in an action prior to seeking the documents from a non-party, a subpoena duces tecum places an undue burden on a non-party." *Genus Lifesciences Inc. v. Lannett Co.*, 2019 WL 7313047, at *4 (N.D. Cal. Dec. 30, 2019). A court must also quash or modify a subpoena that "requires disclosure of privileged or other protected matter." Fed. R. Civ. P. 45(d)(3)(A). A court may quash or modify a subpoena that requires "disclosing a trade secret or other confidential research, development, or commercial information." *Id*. 45(d)(3)(B).

Under Civil Local Rule 37, the parties must first meet and confer in an attempt to resolve the matter; otherwise, the "Court will not entertain a request or a motion to resolve a disclosure or discovery dispute." Civil L.R. 37-1(a).

### IV.   ARGUMENT

The motion should be denied because Instacart fails to demonstrate that any of the information and documents the subpoena seeks are (1) not available from a party in the case—Cornershop—***and also*** (2) relevant, proportionate to the needs of the case, and not privileged. Instacart's premature declaration of an impasse, without meaningfully discussing the proposed search scope, also violates Civil Local Rule 37-1(a), providing another reason to deny the motion.

**A.      Requests and Topics 1 Through 5 Seek Information Available from a Party.**

Most, if not all, information responsive to Requests and Topics 1 through 5[2] is available from Cornershop (to the extent it exists). Instacart admits that Requests and Topics 3, 4, and 5, which seek *Cornershop*'s valuation, business plans, and historical performance, are duplicative of requests it has made to Cornershop in Texas. *See* Mot. at 11. And just six days before it filed this motion, Instacart also filed a motion to compel production of the same documents from Cornershop. Drummond Hanson Decl. Ex. B. That motion is still pending, although Cornershop states in its opposition that it has already "offered to produce certain closing documents related to Uber's investment in Cornershop." *Id.* Ex. C at 4. There is no reason to burden a non-party "when the documents sought should be in the possession of the party defendant." *VirnetX, Inc. v. Apple Inc.*, 2014 WL 6979427, at *4 (N.D. Cal. Mar. 21, 2014) (granting motion to quash subpoena). Accordingly, courts in this District have regularly found undue burden where the issuing party has failed to show that requested information cannot be obtained from a party. *See id.*; *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007); *Ow v. United States*, 2018 WL 6267839, at *1 (N.D. Cal. June 12, 2018) (granting motion to quash document requests in part); *Glass Egg Dig. Media v. Gameloft, Inc.*, 2019 WL 4166780, at *5 (N.D. Cal. Sept. 3, 2019) (granting motion to quash).

The same problem exists for Requests and Topics 1 and 2, which seek information about *Cornershop*'s alleged scraping and use of Instacart images and data, and Uber's knowledge of the accused conduct. Parikh Decl. Ex. 4 at 3-4. Instacart's motion shows that it seeks information available from Cornershop: Instacart contends that "if Cornershop informed Uber of its scraping activities and use of Instacart images and data, that would prove Cornershop's knowledge and intent." Mot at 12. But if Cornershop communicated this information to Uber, then Cornershop would have such communications. Instacart fails to address this objection. *See id.* at 11-13.

Contrary to Instacart's position, the fact that the parties are currently litigating Cornershop's objections to overlapping requests (*e.g.*, Mot. at 11) does not weigh in favor of

---

[2] Each document Request has a corresponding deposition Topic, and they are grouped together in the Motion and this Opposition.

compelling a non-party to produce the same documents in another forum. Instead, Instacart must wait to see what Cornershop produces. To the extent that Instacart's motion is denied based on relevance or burden, Instacart should not be permitted to pursue such discovery from non-party Uber. And to the extent the Eastern District of Texas orders Cornershop to produce documents, Instacart should not seek from Uber documents that it successfully compelled from Cornershop.

Disregarding Rule 45, Instacart subpoenaed Uber before it even received Cornershop's first production of emails, and its motion seeks to compel documents from Uber when Instacart is pursuing the same documents from Cornershop now. This is similar to *Glass Egg*, where the court granted the non-parties' motion to quash subpoenas where the parties were in early phases of discovery, criticizing "Plaintiff's scattershot approach" to discovery that put the "cart before the horse." 2019 WL 4166780, at *5. Instacart likewise should obtain its requested documents and testimony from Cornershop. *See* Fed. R. Civ. P. 45(d)(3)(A)(iv); *Genus Lifesciences*, 2019 WL 7313047, at *4.

Unsurprisingly, Instacart's cited authorities do not support seeking duplicative discovery from Uber now. *See* Mot. at 10, citing *Deltona Transformer Corp. v. NOCO Co.*, 2020 WL 4057771, at *3 n.3 (W.D. Wash. July 20, 2020). In *Deltona*, for example, the court in the underlying action had already ordered the defendant to produce the same documents that were subpoenaed from the non-party, but the defendant had not produced them. In light of these facts, the court concluded that the non-party had not actually shown that the defendant possessed the documents and compelled their production from the non-party. 2020 WL 4057771, at *3 n.3. *LG Display Co. v. Chi Mei Optroelectronics Corp.*, likewise does not apply.  Mot at 11.  In that case, the subpoena issued ***after*** a party production to test accuracy and completeness of the party's production. 2009 WL 223585, at *3 (S.D. Cal. Jan. 28, 2009). Here, the Texas court has not yet ruled on Instacart's motion to compel the same documents from Cornershop, Instacart has not identified documents solely in Uber's possession, and Instacart subpoenaed Uber before Cornershop has produced the documents Instacart seeks.

### B. Requests and Topics 3, 4, and 5 Seek Irrelevant Documents and Testimony Disproportionate to the Needs of the Case.

Request 3 seeks "[a]ll documents concerning any business models, forecasts, business plans, budgets, and variance analysis for Cornershop in the United States, including but not limited to ones concerning Cornershop as owned by or subsumed within Uber." Parikh Decl. Ex. 4 at 3 & 4. Request 4 seeks "[a]ll documents concerning the past, present, or future value, whether actual or potential, of Cornershop's business or operations in the United States." *Id.* Request 5 seeks "[a]ll documents concerning, any actual or potential benefits, costs, and/or risks, whether monetary or nonmonetary, associated with the timing of Cornershop's entry into the U.S. market." *Id.* Topics 3, 4, and 5 seek testimony about the same subjects. *See id.* Instacart fails to articulate why documents and information responsive to these broad requests and topics—even if any were solely in Uber's possession—are relevant and proportionate to the needs of the case. Instacart does not defend the full scope of any of these requests. It contends, however, that information regarding Uber's valuation of Cornershop is relevant to Instacart's damages under either a "head start" or "indirect damages" theory. Mot. at 9. But both damages theories are flawed.

First, Instacart cannot recover "head start" damages based on Cornershop's alleged copyright infringement, regardless of whether any such damages are based on Uber's valuation of Cornershop. Instacart relies on a single trade secret case involving egregious conduct, *Epic Systems Corp. v. Tata Consultancy Services Ltd.*, 980 F.3d 1117 (7th Cir. 2020), but has no authority for such an award in the copyright context. *See* Mot. at 9. Nor does Instacart explain how Uber's valuation is relevant to this theory, if such a valuation did not consider a "head start" based on scraping Instacart. Instacart's "head start" theory also is factually flawed. Cornershop operated for five years before entering the U.S. market in May 2020. Drummond Hansen Decl. Ex. C at 5. During that time, Cornershop became one of the largest delivery apps in Latin America. Parikh Decl. Ex. 1 ¶¶ 2-3. Also, only 6 of the Cornershop's 50 U.S. virtual storefronts are at issue in the litigation. *See* Drummond Hansen Decl. Ex. D at 5 (6 storefronts at issue) and Parikh Decl. Ex. 1 ¶ 10 (50 virtual storefronts in the U.S. Instacart's speculative suggestion that

1    even a fraction of Cornershop's value depends on its use of Instacart photographs of common
2    grocery items is farfetched and does not support its broad fishing expedition, which is not tied to
3    the alleged infringement.

4    Second, Instacart's "indirect profits" theory is equally meritless. As Instacart admits,
5    indirect damages from an infringer's sale of its company or assets are only obtainable "where the
6    infringement 'may have actually influenced the purchasing decisions.'" *See* Mot. at 9, citing
7    *Griffo v. Oculus VR, Inc.*, 2018 WL 6265067, at *13 (C.D. Cal. Sept. 18, 2018). Here, Uber has
8    represented to Instacart that (based on a reasonably diligent search) Uber was not aware of
9    Cornershop's alleged "scraping" of images or price information from Instacart at any point before
10   Instacart sued Cornershop. Parikh Decl. Ex. 7 at 5. Accordingly, Uber could not have and did not
11   consider any such "scraping" before investing in Cornershop. Moreover, even if the value of
12   Cornershop to Uber was relevant to any damages model, that value is reflected in the price Uber
13   actually paid for its interests in Cornershop, which has been publicly reported (*see, e.g.*, Mot. at 4
14   n.9) and also is available from Cornershop. Indeed, even Instacart's own authority holds that the
15   purchase price—which Instacart already knows and has access to from Cornershop—is the
16   relevant information. *See id*. at 9, citing *DSC Commc'ns Corp. v. Next Level Commc'ns*, 929 F.
17   Supp. 239, 246 (E.D. Tex. 1996) (holding that a company's purchase price is a "speculative
18   method" for calculating the value of IP where the company's assets consist "almost exclusively"
19   of that IP).

20   The overbreadth of Instacart's requests can be determined by the language of the requests
21   themselves, as well as Instacart's proposed search terms. Instacart, for example, seeks
22   information regarding "[a]ll documents concerning, any actual or potential benefits, costs, and/or
23   risks, whether monetary or nonmonetary, associated with the timing of Cornershop's entry into
24   the U.S. market" (Request / Topic 5)—vague topics that could be at issue in any investment
25   document, as all investment generally considers actual or potential benefits, costs, or risks. Yet all
26   such information cannot be relevant to the narrow issues in the litigation, which concern
27   Cornershop's alleged "scraping" of certain Instacart images of grocery items and pricing
28   information. *See* Parikh Decl. Ex. 2 ¶¶ 1-12. And Instacart's proposed search terms comprising

certain terms within 50 or 100 words of other terms—or without any proximity limit—are highly unlikely to unearth documents where there is a genuine relationship between these words, given their lack of proximity. For example, Instacart proposed "Cornershop* w/100 (risk* or benefit* or cost*) AND ("United States" OR "North America*" OR "U.S." OR "American")" and "Cornershop AND (Texas OR Dallas OR Florida OR Miami OR launch*)". Parikh Decl. Ex. 8. The latter term alone hit on over 4,700 documents for review. *Id.* Ex. 12 at 1.

The discovery cases cited by Instacart are inapplicable. *See* Mot. at 10. *Bristol-Myers Squibb Co. v. Kite Pharma Inc.* involved discovery sought from a non-party who was going to acquire the plaintiff and could then claim damages based on its own lost profits. 2019 WL 8589409, at *4 (C.D. Cal. May 29, 2019). The court agreed that it would be "manifestly unfair" if the non-party could "claim damages based in part on the supposed future lost profits . . . but shield[] itself from discovery about" those lost profits. *Id.* No such concern is present here because Cornershop is a defendant, and Cornershop has ceased the accused activities under an agreed preliminary injunction. In other words, there are no relevant future profits to consider. Nor do *Symantec* or *Waymo* support Instacart. In *Symantec*, the court granted a motion to compel discovery from a party—not a non-party. *Symantec Corp. v. Zscaler, Inc.*, 2019 WL 2288278, at *2 (N.D. Cal. May 29, 2019). Similarly, in *Waymo*, the court quashed discovery from a non-party and compelled discovery from a party. *Waymo LLC v. Uber Techs., Inc.*, 2017 WL 2929439, at *2 (N.D. Cal. July 7, 2017). Rather than supporting Instacart's motion to compel, these cases support Uber's position that Instacart should first seek such discovery from a party, Cornershop.

**C.    Requests and Topics 1 and 2 Seek Irrelevant Documents and Testimony Disproportionate to the Needs of the Case.**

Topic and Request 1 seek testimony about any and all documents concerning "the scraping of data or images by, with the involvement of, at the behest of, or for the benefit of Cornershop, whether directly or indirectly, or Uber's knowledge of the same." Parikh Decl. Ex. 4 at 3 & 4. Topic and Request 2 seek testimony about any and all documents concerning "Cornershop's use in the United States of images, data, trademarks, or trade names without permission from their owners, and Uber's knowledge of the same." *Id.* On their face, these are not

tailored to the litigation, as they are not even limited to scraping or use of Instacart information, and seek any use of "data" without permission. Instacart makes no attempt to justify the full scope of this request. Mot at 11-13.

Uber has explained to Instacart why it has no responsive non-privileged information that is not also in Cornershop's possession: Uber was not aware of Cornershop's alleged "scraping" of Instacart images or price information before Instacart sued Cornershop. Parikh Decl. Ex. 7 at 5. And any knowledge Uber acquired after the lawsuit would be privileged. *Id.* Ex. 7 at 6.

Even if Uber had any such knowledge, Uber's knowledge—apart from what it learned from Cornershop—is not relevant to Instacart's claims against Cornershop, and thus not discoverable. *See* Fed. R. Civ. P. 26(b)(1); *Audio MPEG, Inc. v. HP Inc.*, 2017 WL 950847, at *1 (N.D. Cal. Mar. 10, 2017) (quashing subpoena requesting documents and testimony not relevant to issuing party's claims). In *Audio MPEG*, the court rejected a motion to compel non-party discovery because the subpoenaing party failed to show that the non-party's understanding was relevant to the defendants' liability. *Id.* at *3–4.

Like in *Audio MPEG*, Instacart fails to show any relevance of Uber's knowledge to Cornershop's liability. Instacart contends that it is entitled to "discovery to determine whether Uber participated in or worked in concert with Cornershop to facilitate the scraping and copying of Instacart's product catalog, and whether Cornershop has complied with the preliminary injunction order." Mot. at 12, citing *Doe v. Trump*, 329 F.R.D. 262, 275 (W.D. Wash. 2018). But Instacart has not sued Uber, and as noted above, Uber had no knowledge of the alleged scraping before the underlying suit was filed. In any event, Instacart is not entitled to use a third-party subpoena to "troll for new claims or causes of action" against non-party Uber. *See, e.g.*, *Franklin v. United States*, 2013 WL 11336864, at *2 (D.N.M. Aug. 28, 2013). Should Instacart be concerned with Cornershop's compliance with the preliminary injunction, as it (newly) contends (Mot. at 12), it should seek that information from Cornershop, as Instacart's cited case, *Doe v. Trump*, confirms. 329 F.R.D. at 275 (granting limited discovery request to assess the ***defendant's*** compliance with a preliminary injunction).

**D.     Instacart Improperly Seeks Privileged Information and to Burden Uber with Logging Irrelevant Information.**

To the extent the Court orders the production of any documents or testimony, the Court should exclude any privileged information from its order. Fed. R. Civ. P. 45(d)(3)(A). As Uber has explained, the subpoena improperly seeks privileged information. Uber has identified the categories of privileged information that Instacart seeks, as well as explained the burdens involved in scouring voluminous documents for privileged information and redacting it. Parikh Decl. Ex. 7. For example, based on Uber's investigation to date, Uber's first knowledge of alleged Cornershop "scraping" of Instacart images and prices (Topics and Requests 1 and 2) was after the lawsuit was filed, and such information is privileged. *Id.* Ex. 7 at 5. Topics and Requests 3, 4, and 5 likewise seek to compel Uber to review and log various attorney-client and work product communications with Uber's in-house lawyers or outside counsel. *Id.* Ex. 7 at 6. Finally, Topic and Request 6 seeks information related to the litigation and Uber's preparation for a requested deposition (*id.* Ex. 4 at 3-4), areas clearly protected by attorney-client and work product privileges, absent an exception.

Uber should not be compelled to produce any such privileged documents or information, or to search for documents and log or redact documents responsive to overly broad requests with little if any relevance to the litigation. Instacart's motion even seeks to force Uber to log post-suit communications regarding the lawsuit, when such information clearly is privileged and Instacart has articulated no relevance even under Instacart's flawed theories. Mot. at 13. As Uber explained to Instacart, moreover, Uber remains willing to provide a log after the appropriate scope of discoverable information (if any) is determined. Parikh Decl. Ex. 12 at 2. Thus, to the extent the Court orders Uber to produce documents, Uber will provide a privilege log for any documents withheld based on privilege.

**E.     Request and Topic 6 Are Improper.**

Deposition Topic 6 seeks discovery concerning "Uber's search for, collection, and production of documents in connection with this litigation," and Request 6 seeks "all documents [the witness] relied on in preparing for the deposition noticed concurrently with these requests for

1  production." Parikh Decl. Ex. 4. This topic calls for improper "discovery about discovery." A
2  party generally is not entitled to discovery about another party's (or non-party's) compliance with
3  discovery requests because it is not reasonably calculated to lead to the discovery of admissible
4  evidence. *See, e.g.*, *Advante Int'l Corp. v. Mintel Learning Tech.*, 2006 WL 3371576, at *4 (N.D.
5  Cal. Nov. 21, 2006) (denying motion to compel that sought discovery directed to whether all
6  responsive documents were produced). Instacart's authority does not provide otherwise. *United*
7  *States v. Lee* (Mot. at 8), for example, merely states that a reasonable search is required, not that
8  discovery about discovery is permissible. 2009 WL 1108697, at *2 (N.D. Cal. Apr. 24, 2009).
9  Here too, Instacart's motion is premature, since Uber has not been compelled to produce any
10 documents or witness testimony. And, to the extent Uber is not compelled to produce anything,
11 these requests would be moot.

### F. Instacart Failed to Sufficiently Meet and Confer Before Moving to Compel.

Notwithstanding Uber's valid objections, Uber has been willing to explore a compromise.

After Uber objected to Instacart's vague requests, Instacart proposed search terms. Parikh Decl. Ex. 8. But, as discussed above, the terms Instacart proposed were inappropriately broad and likely to result in a large number of irrelevant search hits given the obvious lack of proximity or connection in the proposed terms. *Id.* Ex. 9. These proposed terms also would impose a burden on Uber greater than could be imposed on a party to the case because they do not comply with the ESI order in the underlying case. *See* Drummond Hansen Decl. Ex. A at 4-5. In light of these concerns, Uber proposed counter search terms with a greater proximity of Cornershop's proposed terms and offered to search 5 custodians in response to Instacart's requests, in addition to conducting "targeted" searches (as Instacart requested). Parikh Decl. Ex. 12 at 4. Instacart rebuffed this proposal, rushing to file this motion just days after filing an overlapping motion against Cornershop in the underlying action. Drummond Hansen Decl. Ex. B. Instacart's motion still fails to identify why Uber's proposed searches are insufficient. The motion should be denied.

### V.   CONCLUSION

Instacart's premature motion to compel should be denied in its entirety, and Uber should be granted its fees in responding. If the Court orders Uber to produce any documents or designate

witnesses to testify at deposition regarding any topics, Instacart should be required to reimburse Uber for the expenses incurred, including attorneys' fees, from compliance with the Court's order. *See* Fed. R. Civ. P. 45(d)(2)(B)(ii); *Legal Voice v. Stormans, Inc.*, 738 F. 3d 1178, 1184-86 (9th Cir. 2013). Uber should also only be required to produce a privilege log after the scope of discoverable information (if any) is determined.

Dated:  January 22, 2021

DAVID R. EBERHART
MELODY DRUMMOND HANSEN
MEGAN HAVSTAD
ANDREW M. LEVAD
O'MELVENY & MYERS LLP

By:   /s/ *Melody Drummond Hansen*
Melody Drummond Hansen
Attorneys for Uber Technologies, Inc.