UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAPLEBEAR INC., | Case No.  21-mc-80007-SK |
| Plaintiff, | |
| v. | **ORDER ON MOTION TO COMPEL** |
| UBER TECHNOLOGIES, INC., | Regarding Docket Nos. 1, 6, 10, 17 |
| Defendant. | |

Now before the Court is the motion filed by Maplebear, Inc. doing business as Instacart ("Instacart") to compel compliance with a subpoena it issued to Uber Technologies, Incorporated ("Uber").

Federal Rule of Civil Procedure 45 governs discovery of nonparties by subpoena.  The scope of the discovery that can be requested through a subpoena under Rule 45 is the same as the scope under Rule 26(b).  Fed. R. Civ. P. 45 Advisory Comm.'s Note (1970) ("[T]he scope of discovery through a subpoena is the same as that applicable to Rule 34 and other discovery rules."); Fed. R. Civ. P. 34(a) ("A party may serve on any other party a request within the scope of Rule 26(b).").  Rule 26(b) allows a party to obtain discovery concerning any nonprivileged matter that is relevant to any party's claim or defense and that is "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).

A court must protect a nonparty subject to a subpoena if the subpoena "requires disclosure of privileged or other protected matter" or the subpoena "subjects a person to undue burden."  Fed. R. Civ. P. 45(d)(3).  A court must also limit discovery if it is unreasonably duplicative, if it can be

1  obtained from a source that is more convenient or less burdensome, or if the burden of producing

2  it outweighs its likely benefit.  Fed. R. Civ. P. 26(b)(2)(C).  Rule 45 also provides that the Court

3  shall quash or modify a subpoena that imposes an undue burden.  Fed. R. Civ. P. 45(d)(3)(A)(iii).

4  "The Ninth Circuit has long held that nonparties subject to discovery requests deserve extra

5  protection from the courts."  *Lemberg Law LLC v. Hussin*, 2016 WL 3231300, at *5 (N.D. Cal.

6  June 13, 2016) (citation omitted).

7        Here, Instacart seeks information from Uber, which announced in October 2019 that it was

8  acquiring a majority interest in Instacart's competitor Cornershop and in fact acquired that

9  majority interest.  Instacart contends in the underlying litigation in the U.S. District Court for the

10  Eastern District of Texas that Cornershop "scraped" Instacart's data and used it for Cornershop's

11  benefit.  (Dkt. No. 1-3 (*Maplebear Inc. DBA Instacart v. Cornershop Technologies, Inc., et al*.,

12  Case No. 2:20-cv-240, E.D. Texas).)  Instacart alleges that Cornershop "copied and used without

13  authorization thousands of copyrighted and licensed images, along with product descriptions,

14  pricing data, and other information."  (*Id*.)  Instacart alleges that Cornershop's employees created

15  accounts with Instacart to scrape Instacart's data and that such actions violated the terms of service

16  with Instacart.  (*Id*.)  Instacart brings claims under the Computer Fraud and Abuse Act, 18 U.S.C.

17  §1030(g), Texas Harmful Access by a Computer Act, Tex. Penal Code §33.02, the Digital

18  Millennium Copyright Act, 17 U.S.C. 17 U.S.C.  §§ 1202(b)(1)-(3), and the Copyright Act, 17

19  U.S.C. §501, and claims for common law unfair competition and civil conspiracy.  (*Id*.)

20        Instacart seeks six categories of information from Uber:

    1.    All documents concerning the scraping of data or images by, with the
involvement of, at the behest of, or for the benefit of Cornershop, whether
directly or indirectly, or Uber's knowledge of the same.

    2.    All documents concerning Cornershop's actual or contemplated use in the
United States of images, data, trademarks, or trade names without
permission from their owners, or Uber's knowledge of the same.

    3.    All documents concerning any business model, forecasts, business plan,
budget, or variance analysis for Cornershop in the United States, including
but not limited to ones concerning Cornershop as owned or subsumed
within Uber.

    4.    All documents concerning the past, present or future value, whether actual
or potential, of Cornershop's business or operations in the United States.

    5.    All documents concerning any actual or potential benefits, costs, and/or

risk, whether monetary or nonmonetary, associated with the timing Cornershop's entry into the U.S. market.

6. All documents [Uber] relied on in preparing for the deposition notice concurrently with this request for production.

(Dkt. No. No. 1-5.)

In addition, Instacart seeks to depose Uber on the following, related topics:

1. The scraping of data or images by, with the involvement of, at the behest of, or for the benefit of Cornershop, whether directly or indirectly, with Uber's knowledge of the same.

2. Cornershop's use in the United States of images, data, trademarks, or trade names without permission from their owners, and Uber's knowledge of the same.

3. Business model, forecasts, business plan, budget, or variance analysis for Cornershop in the United States, including but not limited to ones concerning Cornershop as owned or subsumed within Uber.

4. The past, present or future value, whether actual or potential, of Cornershop's business or operations in the United States.

5. Any actual or potential benefits, costs, and/or risk, whether monetary or nonmonetary, associated with the timing Cornershop's entry into the U.S. market.

6. Uber's search for, collection, and production of documents in connection with this litigation.

(Dkt. No. 1-5.)

Instacart argues that it seeks this information from Uber to show damages for copyright infringement based on a theory of disgorgement or unjust enrichment.  Instacart argues that one way that it can show that Cornershop gained unjust riches is by showing that Uber paid far more for its majority interest in Cornershop because of the intellectual property Cornershop pilfered from Instacart.  The parties agree that a party may recover indirect profits where there is a sale of a company or its assets and the "infringement 'may have actually influenced that purchasing decisions.'"  *Griffo v. Oculus VR, Inc.*, 2018 WL 6265067, at *13 (C.D. Cal. Sept. 18, 2018.)

In response, Uber argues that Instacart should obtain this data from Cornershop and that Cornershop has agreed to provide the vast majority of the relevant information to Instacart in the underlying litigation and that the information provided in the underlying litigation is sufficient for Instacart to prepare its calculation of damages.  Thus, Uber argues that the deposition subpoena is duplicative of information sought from Cornershop in the underlying litigation.  The Court agrees that, in large part, the information Instacart seeks from Uber is duplicative of information sought

from Cornershop in the underlying litigation.  The only exceptions are the following:  (1) any

information about Uber's knowledge, before the acquisition of the majority interest in Cornershop,

of Cornershop's practice of scraping intellectual property from Instacart's website and valuation of

that practice and the resulting data, and (2) Uber's valuation of Cornershop's large stock of images

and pricing data that were taken from Instacart.[1]  However, the topics and categories of documents

sought above are far broader than this narrow field.  Thus, the Court GRANTS IN PART and

DENIES IN PART the motion to compel compliance with the subpoena.  Uber must provide the

following: (1) documents showing, before its acquisition of the majority ownership interest in

Cornershop, Uber's knowledge or understanding of Cornershop's scraping of data from Instacart's

website, and (2) documents discussing Uber's valuation of Cornershop before the acquisition.  The

deposition topics will also be limited to those two topics.   Uber must provide those documents to

Instacart by March 31, 2021.  The parties may schedule the deposition at their convenience but

may seek the Court's intervention if they are not able to agree upon a date.

The Court GRANTS Instacart's motion to seal the highlighted portions of "Plaintiff's

Statement of Position regarding Updated Status in Underlying Action" and the Exhibits A-J to the

supporting Goldberg Declaration.  (Dkt. No. 17.)

The Court GRANTS IN PART and DENIES IN PART Instacart's Motion to Seal (Dkt.

No. 6).  The highlighted portion of Instacart's "Motion to Compel Uber Technologies, Inc.'s

Compliance with Subpoena" is not confidential and thus the Court DENIES the motion as to that

portion of the motion to seal.  The Court finds that Exhibit 10 to the Parikh Declaration in support

of Instacart's Motion to Compel Uber Technologies, Inc.'s Compliance with Subpoena is

confidential and thus GRANTS the motion to seal that document.

The Court GRANTS IN PART and DENIES IN PART Instacart's Motion to Seal.  (Dkt.

No. 10).  The Court finds that the redacted portion of Instacart's "Reply in Support of its Motion

to Compel Uber Technologies, Inc.'s Compliance with Subpoena" is not confidential and thus

---

[1]  Uber argues that it has no such information because Uber did not know or agree to any improper activity by Cornershop, but the process of responding to a subpoena under penalty of perjury does provide assurances for the party seeking information as required by the Federal Rules of Civil Procedure.

United States District Court
Northern District of California

DENIES the motion to seal that portion of the brief.  The Court finds that Exhibit 3 to the "Yeats-Rowe Declaration ISO Instacart's Reply Re: Motion to Compel Uber Technologies, Inc.'s Compliance with Subpoena" is confidential and GRANTS the motion to seal that document.

**IT IS SO ORDERED**.

Dated: March 23, 2021

SALLIE KIM
United States Magistrate Judge